OPINION OF THE COURT
 

 Read, J.
 

 On February 2, 2001, the Public Employment Relations Board (PERB) found that the Town of Southampton had violated section 209-a (1) (d) of the Taylor Law (Civil Service Law § 200
 
 et seq.)
 
 by failing to continue the status quo during negotiations with the Police Benevolent Association of Southampton Town, Inc. (PBA) for a successor collective bargaining agreement. The issue on this appeal is whether PERB properly defined the status quo to encompass an overtime provision in an expired interest arbitration award. Because PERB’s definition of the status quo to include this provision is reasonable, the Appellate Division properly confirmed PERB’s determination.
 

 I.
 

 The complicated history of this case begins on December 31, 1994, with the expiration of the 1992-1994 collective bargaining agreement between the Town and the PBA. After negotiations
 
 *516
 
 for a successor agreement reached an impasse, the PBA sought interest arbitration under section 209 (4) of the Civil Service Law. Section 209 (4) was enacted in 1974 to prescribe compulsory and binding arbitration to resolve an impasse in collective negotiations between employee organizations representing police and firefighters outside the City of New York and their local government employers.
 

 The three-person arbitration panel made findings as to disputed items and, at the parties’ request, incorporated into the award uncontested items, which were spelled out in an exhibit entitled “Items agreed to between the parties and incorporated into Award.” This exhibit included a provision governing overtime pay as follows:
 

 “Overtime: Effective upon the issuance of this Award employees [sic] hourly and daily rate of pay shall be calculated incorporating longevity pay, night differential pay, and holiday pay earned the previous calendar year, into base pay.”
 

 This provision set forth a new understanding between the parties, which was not part of the 1992-1994 agreement.
 

 On September 20, 1996, the arbitration panel issued an interest arbitration award, which included the supposedly agreed-upon overtime language. The Town subsequently protested, arguing that inclusion of the words “and daily” was erroneous because the PBA’s demand, which the overtime provision was intended to cover, only sought to change how the Town calculated the hourly rate of pay in conformity with the Fair Labor Standards Act. The PBA countered that any mistake was not mutual, that it had always intended and understood the overtime provision to change the method for calculating both the hourly and daily rates of pay.
 

 On October 21, 1996, the arbitration panel issued its final opinion and award for the period of January 1, 1995 through December 31, 1996. The 20-page opinion discussed the statutory factors that the panel was required to consider (see Civil Service Law § 209 [4] [c] [v]), focusing on the Town’s ability to pay.
 
 [1]
 
 The panel did not change the disputed language of the overtime provision, stating that it was “powerless” to alter the parties’ stipulation, and that the cost impact of their disagree
 
 *517
 
 ment over the overtime provision’s scope did not affect the award’s analysis and outcome.
 

 After issuance of the interest arbitration award, the Town calculated the hourly rate of pay, but not the daily rate of pay, in conformity with the award’s overtime provision. As a result, the PBA filed a grievance on January 22, 1997, which the Town denied on January 31, 1997.
 

 In May 1997, the PBA filed a demand for arbitration with PERB, and moved in Supreme Court to confirm the interest arbitration award. By stipulation dated June 27, 1997, the Town consented to confirmation, with the understanding that the award would be interpreted by a grievance arbitrator in accordance with the terms of the parties’ 1992-1994 agreement, and without prejudice to the Town’s right to challenge the grievance award.
 

 In the subsequent grievance arbitration, the PBA took the position that the award’s overtime provision changed the formula for calculating the daily rate of pay for holiday and sick leave pay; the Town asserted that the overtime provision affected only hourly and daily overtime rates. The arbitrator concluded that the Town was violating the award by refusing to apply the overtime provision to calculate the daily rate of pay for holidays, but that the overtime provision did not apply to sick pay.
 

 Pursuant to the terms of the parties’ 1992-1994 agreement, the grievance award, which was issued on January 4, 1999, was retroactive to December 6, 1996. By an order entered on October 12, 1999, Supreme Court granted the PBA’s application to confirm the award, and denied the Town’s cross motion to vacate or modify it. Supreme Court declined to address whether the grievance award extended beyond December 31, 1996, when the interest arbitration award expired, suggesting that this might be “an issue that should be raised as an improper employer practice before [PERB].”
 

 At the same time as the PBA was pursuing its grievance in 1997, the Town and the PBA were negotiating a successor collective bargaining agreement for the period January 1, 1997 through December 31, 2000. Through mediation, the parties arrived at a memorandum of agreement, dated June 16, 1997. The memorandum set forth the parties’ “tentative agreement” to enter into a new agreement within 90 days to continue all undisputed terms of the 1992-1994 agreement as well as incorporate the uncontested provisions of the interest arbitra
 
 *518
 
 tion award. The parties, however, never executed a new agreement.
 

 In August 1999, the PBA filed an improper practice charge to contest the Town’s refusal to calculate holiday pay in accordance with the grievance award for periods after December 31, 1996, the interest arbitration award’s expiration date. The Town argued that PERB lacked jurisdiction because the PBA was attempting to enforce an agreement between the parties, and under Civil Service Law § 205 (5) (d), PERB cannot exercise jurisdiction over such disputes. PERB’s Administrative Law Judge (ALJ) rejected the Town’s jurisdictional argument because the PBA “[was] not seeking to enforce the terms of either the interest arbitration or grievance award, but [was] challenging] the right of the Town to alter the status quo after the expiration of the award” (33 PERB 1t 4600, at 4791 [2000]). The ALJ concluded that PERB had jurisdiction, and that if proven, the charge would be actionable under section 209-a (1) (d) for refusal to negotiate in good faith.
 

 After conducting a hearing, the ALJ determined that, by failing to calculate daily rates of pay for holidays in accordance with the grievance arbitration award, the Town was unilaterally changing the status quo and thus violating section 209-a (1) (d). The ALJ relied on
 
 Matter of Blooming Grove Police Benevolent Assn.
 
 (33 PERB U 4581 [2000]) for the proposition that “the status quo after the expiration of an interest arbitration award is defined by reference to the terms of that award, and by the expired [collective bargaining agreement], to the extent that the terms of the [collective bargaining agreement] are not super-ceded by the award” (33 PERB 1i 4600, at 4791).
 

 The ALJ rejected the Town’s argument that, by defining the status quo in terms of the interest arbitration award, he was, in fact, extending the award’s term beyond Civil Service Law § 209 (4) (c) (vi)’s statutory two-year limit.
 
 [2]
 
 The ALJ concluded that “[w]hile the effect may at times be the same, the term of the award itself is not extended, only the terms and conditions of employment incorporated therein”
 
 (id.).
 

 The ALJ ordered the Town to apply the overtime provision in the interest arbitration award to calculate daily rates for holi
 
 *519
 
 day pay, and to make PBA members whole for holiday pay received since December 31, 1996. The Town filed exceptions with PERB.
 

 PERB characterized the issue in this case—“whether the terms of an interest arbitration award can set the
 
 status quo
 
 between the parties until a new collective bargaining agreement is negotiated”—as “one of first impression” (34 PERB 1i 3007, at 3011 [2001]). Adopting and applying the rationale in
 
 Blooming Grove,
 
 PERB denied the Town’s exceptions and affirmed the ALJ’s decision, concluding that “the
 
 status quo
 
 is set forth in the terms of the interest arbitration award, as construed by the grievance arbitration award”
 
 (id.).
 
 The award thus defines “the terms and conditions of employment between the parties unless and until the terms are varied by a subsequent collective bargaining agreement or interest arbitration award”
 
 (id.).
 

 The Town then commenced this CPLR article 78 proceeding in Supreme Court. Upon transfer of the proceeding, the Appellate Division, with two Justices dissenting, confirmed PERB’s determination, dismissed the Town’s petition and granted PERB’s application to enforce the determination (307 AD2d 428 [3d Dept 2003]). We now affirm.
 

 II.
 

 As an initial matter, we conclude that PERB has jurisdiction over the parties’ dispute. The PBA’s charge involves the Town’s conduct after the expiration of both the 1992-1994 collective bargaining agreement and the interest arbitration award, and during the time when the parties were under a duty to negotiate a successor agreement. Contrary to the position taken by the Town, this dispute does not involve enforcement of an agreement and does not invoke the limitation on PERB’s jurisdiction found in section 205 (5) (d) of the Civil Service Law
 
 (see e.g. Matter of Roma v Ruffo,
 
 92 NY2d 489, 498 [1998] [commenting that “the courts have deferred to PERB’s interpretation of the restriction on its jurisdiction in Civil Service Law § 205 (5) (d)”]).
 

 Moreover, we reject the Town’s characterization of the issue on this appeal as whether PERB impermissibly extended the interest arbitration award in violation of the two-year limitation in Civil Service Law § 209 (4) (c) (vi). No request was made for PERB to extend the award’s term, and PERB did not take this action. Rather, PERB defined the status quo as comprising the terms and conditions of employment set forth in the expired
 
 *520
 
 award and the 1992-1994 agreement, to the extent that the agreement’s terms were not superseded by the award’s. The distinction between defining the status quo for purposes of an improper practice charge and extending an interest arbitration award is real, with important consequences for the parties’ bargaining status. If, as the Town suggests, the interest arbitration award has been extended, the duty to negotiate over the overtime provision would be suspended. Instead, the parties remain under a duty to negotiate a successor agreement, and if they fail to reach agreement, the impasse procedures in section 209 are available. Moreover, the provisions of the Taylor Law defining the parties’ rights and responsibilities while under this duty—including those defining improper employer and employee organization practices—remain in effect. Although we recognize that in this case the “net effect” of PERB’s decision is that the Town “is bound to comply with the terms of the [interest arbitration award] beyond the two years fixed by the Legislature” (307 AD2d at 433 [Kane, J., dissenting]), this does not affect the characterization of the dispute. Instead, it goes to the reasonableness of PERB’s definition of the status quo.
 

 In sum, we agree with PERB’s characterization of the issue in dispute, and so conclude that this appeal’s outcome turns on whether PERB properly defined the status quo to encompass the overtime provision in the expired interest arbitration award. Since definition of the status quo “relies upon the special competence [PERB] is presumed to have developed in its administration of the statute,” we ultimately must afford great deference to PERB’s determination
 
 (see Matter of Rosen v Public Empl. Relations Bd.,
 
 72 NY2d 42, 47 [1988]).
 

 III.
 

 While the precise issue in this appeal may be novel, we are not bereft of guideposts. In
 
 Matter of Triborough Bridge & Tunnel Auth. (District Council 37 & Local
 
 1396) (5 PERB 1i 3037 [1972],
 
 confirming
 
 5 PERB 11 4505 [Hearing Officer 1972]), PERB considered what terms govern during the “hiatus between an expired contract and the conclusion of negotiations for a successor contract,” a period otherwise known as the
 
 “status quo”
 
 (5 PERB 1i 4505, at 4521-4522). The parties in
 
 Triborough
 
 negotiated a provision in their collective bargaining agreement whereby salary increments would be based on longevity. The agreement expired and was silent as to whether the provision was intended to survive its fixed term. The employer failed to
 
 *521
 
 continue the increments after the agreement’s expiration, and while a successor agreement was being negotiated. As a result, the employee organization filed an improper practice charge, alleging that the employer had refused to negotiate in good faith in violation of Civil Service Law § 209-a (1) (d).
 

 The Hearing Officer held that so long as an employee organization does not engage in an illegal strike,
 
 [3]
 
 the duty to negotiate in good faith prohibits an employer from “unilaterally alter[ing] existing mandatory subjects of negotiations while a successor agreement is being negotiated” (5 PERB 11 4505, at 4522). This principle, referred to as the
 
 “Triborough
 
 doctrine,” follows from the proposition that “the statutory prohibition against an employee organization resorting to self help by striking imposes a correlative duty upon a public employer to refrain from altering terms and conditions of employment unilaterally during the course of negotiations” (5 PERB H 3037, at 3064).
 

 PERB subsequently decided that a unilateral change to an employer’s past practice regarding a mandatory subject of negotiation also constitutes an improper employer practice under section 209-a (1) (d)
 
 (see Matter of New Berlin Faculty Assn., NYSUT, AFT, AFL-CIO,
 
 25 PERB 1Í 3060 [1992];
 
 Matter of Milonas v Public Empl. Relations Bd.,
 
 225 AD2d 57, 64 [3d Dept 1996] [“The duty to negotiate in good faith includes an obligation to continue past practices that involve mandatory subjects of negotiation, even in the absence of a provision to that effect in the contract”]). In 1982, the Legislature expressed its approval of the
 
 Triborough
 
 doctrine by expanding it to include not just mandatory subjects of negotiation, but all terms of a collective bargaining agreement
 
 (see
 
 Civil Service Law § 209-a [1] [e]).
 

 Here, the issue is a corollary of
 
 Triborough,
 
 first resolved by the ALJ in
 
 Blooming Grove,
 
 the reasoning of which PERB expressly adopted. In
 
 Blooming Grove,
 
 the parties submitted to interest arbitration, and the employer complied with the interest arbitration award during its term. After the award’s expiration, the employer reverted to the terms of the expired collective bargaining agreement, and the employee organization filed an improper practice charge under section 209-a (1) (d).
 

 
 *522
 
 Relying principally on
 
 Triborough
 
 and PERB’s decisions in
 
 Matter of Massapequa Union Free School Dist.
 
 (8 PERB 1Í 3022 [1975]) and
 
 Matter of City of Kingston
 
 (18 PERB 1Í 3036 [1985]), the ALJ in
 
 Blooming Grove
 
 held that
 

 “the parties’ expired collective bargaining agreement defines the status quo in employees’ terms and conditions of employment pursuant to § [209-a (1) (d)] only to the extent that the compulsory interest arbitration award does not supercede the terms of the contract. To the extent that the terms of an award supercede mandatorily negotiable terms of employment in an expired agreement, absent objection from the employee organization, the award redefines the status quo which must be maintained under § [209-a (1) (d)] of the Act” (33 PERB 1i 4581, at 4710).
 

 In
 
 Massapequa,
 
 a legislative imposition of new terms and conditions of employment under section 209 (3) (e) (iv) resolved an impasse. PERB concluded that the legislative imposition constituted the status quo that the employer was obligated to continue until the parties reached a new agreement. For purposes of defining the status quo in
 
 Blooming Grove,
 
 the ALJ viewed an interest arbitration award, which is imposed on the public employer by an arbitration panel for a two-year period, as analogous to a legislative imposition, which is imposed on a public employer by its legislative body for a one-year budget cycle
 
 (see Matter of City of Mount Vernon,
 
 5 PERB 1! 3057, at 3101 [1972] [when contesting parties cannot reach agreement, “the function of a local legislature is similar to that of an arbitrator” while “the power of the local legislature is limited to taking such action as is necessary to bridge a single budget period”]).
 

 In
 
 City of Kingston,
 
 PERB addressed the effect of Civil Service Law § 209-a (1) (e) on the rights of the parties to seek interest arbitration under section 209 (4). PERB concluded that an employee organization had the option either to extend an expired collective bargaining agreement under section 209-a (1) (e) or to demand interest arbitration. If the employee organization submitted to arbitration, it waived its right to require the employer to continue the terms of the expired agreement.
 

 Moreover, PERB determined that section 209-a (1) (e) placed a limitation on the employer’s right to seek arbitration. Because an employee organization was entitled to have the terms of an
 
 *523
 
 expired collective bargaining agreement continued under section 209-a (1) (e), an employer could not avoid this obligation simply by requesting arbitration. As a result, an employer could only seek interest arbitration if the employee organization consented to it: “the terms of an expired agreement may not be changed except by a subsequent negotiated agreement unless the union involved agrees to the submission of the deadlock for resolution by an arbitration award or a legislative determination” (18 PERB 1i 3036, at 3076;
 
 see also Matter of City of Buffalo,
 
 19 PERB 1f 3023 [1986] [union that participates in impasse procedures under section 209 to obtain improvements in terms and conditions of employment may not demand that the employer continue the terms of the expired agreement that the union sought to modify]).
 

 Thus, PERB’s longstanding precedent supports its decision to define the status quo to include the expired interest arbitration award to the extent its provision for overtime, as interpreted by the grievance award, superseded the parties’ 1992-1994 collective bargaining agreement. The award effectively redefined the parties’ agreement on this mandatory term and condition of employment. If the Town wanted to alter the change wrought by the award, it was obligated to obtain the employee organization’s consent through collective bargaining.
 

 Finally, we note that PERB’s decision in this regard fosters the finality and harmony that the Taylor Law was intended to achieve by maintaining the extant terms and conditions of employment rather than looking back to what existed before impasse resolution. PERB has not impermissibly extended the term of an interest arbitration award; rather, PERB has reasonably balanced the bargaining rights of the parties by requiring good faith negotiations consonant with the Taylor Law’s objectives.
 

 Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and R.S. Smith concur.
 

 Judgment affirmed, with costs.
 

 [1]
 

 . An interest arbitration panel must consider, among other factors, “the interests and welfare of the public and the financial ability of the public employer to pay” (Civil Service Law § 209 [4] [c] [v] [b]).
 

 [2]
 

 . Section 209 (4) (c) (vi) limits the terms of an interest arbitration award to no more than two years from the termination date of the expired collective bargaining agreement or, if there was no previous agreement, to two years from the date of the arbitration panel’s determination.
 

 [3]
 

 . The Taylor Law provides that “[n]o public employee or employee organization shall engage in a strike, and no public employee or employee organization shall cause, instigate, encourage, or condone a strike” (Civil Service Law § 210 [1]).