6

In the Matter of MOHAWK VALLEY NURSING HOME, INC., Respondent, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant, et al., Respondent.

Third Department, December 24, 1992

APPEARANCES OF COUNSEL

*Ernest F. Hart,* Albany, for appellant.

*Tobin & Dempf,* Albany *(John W. Clark* of counsel), for respondent.

## OPINION OF THE COURT

HARVEY, J.

In April 1990, respondent United Food and Commercial Workers District Union Local 1, AFL-CIO (hereinafter UFCW) petitioned respondent Public Employment Relations Board (hereinafter PERB) to certify UFCW as the bargaining representative of certain of petitioner's employees. PERB ultimately approved a consent agreement between petitioner and UFCW in which it was agreed that a secret ballot election would be conducted. The consent agreement further provided that eligible voters were those "in the employ of [petitioner] on 6/29/90" and "who are so employed on the date of the election".[1] The agreement also stated that a "tally of ballots" would occur "[a]s soon after the election as feasible". PERB thereafter sent each of the parties a notice of election and sample ballot. The notice of election provided, *inter alia,* that the election would be conducted by "SECRET MAIL BALLOT" and that ballots were to be "received at the Latham post office no later than 9:00 A.M. on August 9, 1990".[2]

Subsequently, on August 9, 1990, PERB tallied the election ballots and notified the parties that there were 42 votes cast in favor of UFCW, 40 votes against UFCW, four "void" ballots and two challenged ballots. Petitioner's objections to this result included an objection to the validity of the mail-in

1. We note that the consent agreement did not define the term "date of election".

2. The chronology of events was to be that petitioner was to furnish the employee eligibility list by July 13, 1990; the PERB mail-out date for ballots was July 20, 1990; the call-in date for eligible voters who did not receive ballots was July 27, 1990 and the ballot count date was August 9, 1990.

process itself, and also a criticism of the action of PERB's Director in voiding certain of the ballots. Upon review of several of the Director's decisions in this matter by the full PERB Board, a final decree was issued that, *inter alia,* affirmed the Director's decision to void the ballot cast by Janis Becker (hereinafter the Becker ballot) and reversed the Director's decision to void the ballot of Mark Sommer (hereinafter the Sommer ballot). The Sommer ballot was then opened and found to be against UFCW representation (making the difference in the tally one vote). After denying the remaining exceptions, PERB certified UFCW as the bargaining representative for certain of petitioner's employees. Petitioner thereafter commenced this CPLR article 78 proceeding to challenge this determination. Supreme Court found, *inter alia,* that PERB's determination not to count Becker's ballot was irrational and ordered PERB's determination voiding Becker's ballot to be annulled. PERB now appeals.

We affirm. In our view, Supreme Court correctly annulled PERB's determination not to count Becker's ballot. PERB ruled that Becker was not an eligible employee because, even though she was employed by petitioner on the June 29, 1990 eligibility date, she retired on July 30, 1990 and therefore was not employed by petitioner on August 9, 1990, the last day that votes could be received and the day that the votes were tallied. However, Becker cast her vote in a ballot postmarked July 23, 1990, and which was admittedly received by PERB well before the August 9, 1990 deadline. PERB ruled that August 9, 1990 constituted the official date of the election while petitioner argues that the election was held over several dates starting on July 20, 1990, when PERB mailed the ballots, and ending on August 9, 1990 at 9:00 A.M. We agree with Supreme Court that PERB's determination of the "date of election" was irrational, as was its conclusion that Becker's vote should not be counted because she retired before the ballots were counted.

At the outset we note that, in general, the scope of judicial review of PERB's interpretation of the Civil Service Law is limited in light of the deference accorded to PERB's special competency in this area *(see, e.g., Matter of State of New York [State Univ. of N. Y.] v New York State Pub. Empl. Relations Bd.,* 181 AD2d 391, 395). In this case, however, while elections are conducted under the supervision of PERB's Director *(see,* 4 NYCRR 201.9 [h] [1]), no "special competency" is required to define the term "date of election". Instead, in the absence of

binding statutory rules, this case essentially boiled down to pure contractual construction of the consent agreement. We agree with Supreme Court's interpretation of the parties' intent based upon the language of the agreement itself and guidance from relevant, but not binding, case law. As it stands, it appears that PERB's determination was wholly arbitrary because there was nothing in the consent agreement itself that would support the view that the date the ballots were counted was the intended "date of election". Significantly, PERB's finding flies in the face of the Federal National Labor Relations Board cases which indicate that an employee's resignation after voting but before the ballots are finally counted does not destroy eligibility (see, e.g., St. Elizabeth Community Hosp. v National Labor Relations Bd., 708 F2d 1436, 1444; National Labor Relations Bd. v General Tube Co., 331 F2d 751, 752).[3]

  In any event, an examination of the consent agreement itself demonstrates the irrationality of PERB's determination. The notice of election section required that notice be posted five working days before ballots were mailed to the employees, indicating that the election commenced when the ballots were mailed out on July 20, 1990. As far as individual employees were concerned, the election took place when they received, completed and submitted their ballots. Notably, although PERB equated the date the ballots were counted with the "date of election" and chose August 9, 1990 as the pivotal date, the consent agreement itself makes no such choice, stating only that ballots would be tallied "[a]s soon after the election as feasible" (emphasis supplied). Consequently, in the absence of a specific tally date PERB could have theoretically held off the tally date or "date of election" until an unspecified date in the future under the guise of stating it was not yet feasible to count the votes. Such a tenuous situation could lend itself to abuse and would be unfair to the parties and the employees themselves.[4]

The arbitrariness of PERB's determination is underscored by its inconsistent application of its rule. PERB decided to

3. Although decisions of the National Labor Relations Board or other jurisdictions are generally not binding (see, Matter of State of New York [State Univ. of N. Y.] v New York State Pub. Empl. Relations Bd., supra), they can nevertheless be considered.

4. Sommer's ballot was actually opened and counted on July 18, 1991. Therefore, under PERB's reasoning, this was the date of election for that employee, even though Sommer was no longer employed on that date.

count the vote of Sommer even though Sommer was an employee who had submitted his resignation on July 25, 1990 and which had been approved and accepted by petitioner. Sommer last worked for petitioner on August 6, 1990 even though his benefit days kept him technically on the payroll through August 9, 1990. Notably, in voiding Becker's ballot, PERB found pertinent the fact that because Becker had announced her plan to retire she had no employment-related interest in the final outcome. Nevertheless, Sommer's ballot was counted even though, as an employee who had submitted his resignation, he also lacked a real interest in the outcome. Accordingly, it was inconsistent to void Becker's ballot for this reason while allowing Sommer's ballot to stand. This is particularly true because "[t]he truth is that many people who vote in elections do not have a great stake or interest in the outcome" *(National Labor Relations Bd. v Res-Care Inc.,* 705 F2d 1461, 1472). Given the rapid worker turnover in many companies, it would be irrational to attempt to insure that only ballots of those voters possessing an interest in an election's outcome were counted.

PERB's remaining arguments have been considered and rejected. We have examined PERB's decisions in *Matter of Nassau County Regional Off-Track Betting Corp. (Local 858)* (17 PERB ¶ 4066) and *Matter of County of Erie (Teamsters Local 264)* (18 PERB ¶ 4071) and find them either distinguishable or inapposite.

YESAWICH JR., J. P., LEVINE, CREW III and MAHONEY, JJ., concur.

Ordered that the judgment is affirmed, with costs.