■ In the Matter of CIVIL SERVICE EMPLOYEES ASSOCIATION, INC., LOCAL 1000, AFSCME, AFL-CIO, Petitioner, v PAULINE R. KINSELLA et al., Constituting the New York State Public Employment Relations Board, Respondents. [599 NYS2d 671] — Harvey, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the New York State Public Employment Relations Board which dismissed an improper practice charge filed by petitioner against the Department of Health.

Pursuant to article 15 of the 1985-1988 contract agreement between the Department of Health (hereinafter the Department), petitioner and other unions,* a Statewide committee was established to discuss the issue of smoking in the workplace. After several meetings, the committee developed smoking guidelines, dated August 26, 1986, labeled "Guidelines for Development of Policies on Smoking in the Workplace" (hereinafter the Guidelines). Thereafter, in July 1987 the Department invited members of various unions, such as petitioner, to become part of a Smoking Policy Committee (hereinafter the Committee) which would work toward developing a more stringent smoking policy at Roswell Park Memorial Institute in Erie County.

---

* Article 15 of the contract provides in relevant part:

"§ 15.2 Safety and Health Maintenance Committee (a) There shall be a Statewide Safety and Health Maintenance Committee * * *

"(b) The purpose of the Committee shall be to review and discuss matters of mutual concern in the area of safety and health maintenance in a proactive cooperative fashion. The Committee * * * is intended to be advisory on matters of employee safety and health * * *

"(c) The State shall seek the appropriation of funds by the Legislature * * * to support committee initiatives which shall include * * *

"(4) Exploration of options with respect to health effects of smoking in the workplace which shall include establishing, on a pilot basis, no smoking work areas in State owned and leased buildings."

Roswell Park's smoking policy at that time prohibited smoking in all designated areas and provided that "[s]moking is only permitted in the smoking section of the cafeteria, solaria, and designated office areas to which the public is not exposed". The Committee met several times in 1987 to discuss a smoking policy, the aim of which was apparently to phase out and prohibit smoking at Roswell Park. Despite petitioner's objection to a total smoking ban at these meetings, on October 9, 1987 the unions were presented with a final total smoking policy at Roswell Park and a vote on the policy was requested. However, a representative for petitioner announced that petitioner would not agree to a total ban and asked to negotiate the matter further. Two subsequent meetings in January 1988 and March 1988 between petitioner's representative and the Department resulted in discussions about an alternative smoking policy and a possible impasse. Thereafter, by memorandum dated April 25, 1988, the Department announced a total smoking ban at Roswell Park, which provided in relevant part:

"Smoking by employees, visitors, students and guests is prohibited in all indoor *areas* of [Roswell Park], outside entrances of [Roswell Park] buildings and in [Roswell Park] owned vehicles" (emphasis in original).

Petitioner then filed an improper practice charge with respondents against the Department alleging that the Department violated Civil Service Law § 209-a (1) (d) (Public Employees' Fair Employment Act) by imposing a total smoking ban at Roswell Park without bargaining. The Department answered the charges and asserted affirmative defenses of, *inter alia,* waiver and lack of jurisdiction. Following a hearing, the Administrative Law Judge found in favor of petitioner and concluded that the Department improperly implemented a smoking ban at Roswell Park in areas previously designated as smoking areas. The Department filed exceptions to this decision and respondents reversed, finding that, through article 15 of the contract and the Guidelines developed in August 1986, petitioner had waived the right to any further bargaining regarding the implementation of smoking policies at Roswell Park. Petitioner then commenced this CPLR article 78 proceeding challenging respondents' determination, which was then transferred to this Court pursuant to CPLR 7804 (g).

We confirm. Contrary to petitioner's contentions on review, we find that respondents' determination that petitioner waived its right to negotiate smoking policies by reason of the contract and subsequent Guidelines is supported by substan-

tial evidence. It is well settled that "[a] waiver is 'the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it' " *(Werking v Amity Estates,* 2 NY2d 43, 52, *appeal dismissed, cert denied* 353 US 933, quoting Whitney, Contracts, at 273 [4th ed]; *accord, City of New York v State of New York,* 40 NY2d 659, 669; *Matter of Civil Serv. Empls. Assn. v Newman,* 88 AD2d 685, 686, *affd* 61 NY2d 1001). "Such a waiver must be clear, unmistakable and without ambiguity" *(Matter of Civil Serv. Empls. Assn. v Newman, supra,* at 686). Nevertheless, in reviewing respondents' determination of waiver, this Court is limited to assessing whether this determination is supported by substantial evidence *(see, Matter of Margolin v Newman,* 130 AD2d 312, 316, *appeal dismissed* 71 NY2d 844; *Matter of Civil Serv. Empls. Assn. v Newman, supra,* at 685).

Here, we find that the evidence adequately supports respondents' determination. While it is true, as pointed out by petitioner, that the Guidelines provide that "[a]ny policy promulgated should be developed jointly by union and management and not unilaterally", and the letter from the director of the Governor's Office of Employee Relations which accompanied the distribution of the Guidelines indicate that they "are designed to serve as a framework for the development and/or refinement of policies", these points are not dispositive of the issue at hand. Significantly, the Guidelines also provide that, should a "good faith effort" to identify smoking and non-smoking areas through the labor/management process "not result in resolution, *management shall have the responsibility to take appropriate action"* (emphasis supplied). Moreover, one of the State's representatives who participated in the formulation of the Guidelines testified that a total smoking ban was consistent with the Guidelines. Given this and other evidence, we must conclude that substantial evidence existed to support respondents' determination that the contract and Guidelines were meant "to have been the means by which the parties intended to discharge their mutual right and duty to bargain regarding the development and implementation of smoking policies at the local level".

The remaining arguments of petitioner have been considered and rejected. We note in passing that because petitioner has not challenged respondents' determination of jurisdiction, any arguments relating to this issue have not been explored.

Yesawich Jr., J. P., Levine, Mercure and Mahoney, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.