■ In the Matter of PATROLMEN'S BENEVOLENT ASSOCIATION OF THE VILLAGE OF WALDEN et al., Respondents, v PAULINE KINSELLA, as Chairperson of the State of New York Public Employment Relations Board, et al., Appellants. [693 NYS2d 323] —Spain, J. Appeal from a judgment of the Supreme Court (Keegan, J.), entered April 7, 1998 in Albany County, which granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of the Public Employment Relations Board finding that the Village of Walden had not violated the Public Employees' Fair Employment Act.

Petitioner Patrolmen's Benevolent Association of the Village of Walden (hereinafter PBA) filed an improper practice charge with the Public Employment Relations Board (hereinafter PERB) in February 1995 alleging that the employer, the Village of Walden in Orange County, had failed to negotiate in good faith (*see*, Civil Service Law § 209-a [1] [d]). Specifically, the PBA maintained that the Village had unilaterally discontinued certain fringe benefits[1] previously provided to police officers who were on General Municipal Law § 207-c leave due to injury or illness incurred in the performance of their duties. The parties agree that these terminated benefits had previously been provided by the Village pursuant to a long-standing past practice.

---

1. The benefits in issue included, *inter alia*, vacation, holidays, personal leave, sick leave, bereavement leave, uniform allowance and overtime.

The Village answered and raised the affirmative defense that the PBA had contractually waived the requirement of collective bargaining as to all past practices, including the Village's practice of providing these terminated benefits. This defense was based upon Article XIII of the parties' 1993-1996 collective bargaining agreement (hereinafter the Agreement), entitled "GRIEVANCE PROCEDURE", which essentially sets forth the procedures to be utilized to resolve all grievances—both contractual and noncontractual—between the Village and its police officers. The pivotal sentence on which the Village relies for its waiver claim, which appears immediately prior to the outline of the grievance procedures, provides the following unqualified language: "All past practices may be continued at the Village's discretion". It is the interpretive scope of this sentence which has resulted in divergent rulings at the administrative and Supreme Court levels.

Upon review of the stipulated record and facts, the Administrative Law Judge (hereinafter ALJ) narrowly interpreted that pivotal sentence to mean only that the Village could discontinue noncontractual[2] past practices related to the filing and disposition of grievances, not all past practices. Focusing on the context in which the waiver appears in the Agreement's grievance procedure article, and the fact that Article II, entitled "MANAGEMENT RIGHTS", did not address itself to the waiver of negotiations as to all past practices, the ALJ declined to broadly interpret the subject sentence of Article XIII as conferring on the Village the right to discontinue all past practices in its discretion, i.e., as a waiver by the PBA of the right to collectively bargain all changes in past practices. The ALJ thus concluded that the Village violated Civil Service Law § 209-a (1) (d) by unilaterally refusing to provide officers on General Municipal Law § 207-c leave with the noncontractual fringe benefits.

The Village filed exceptions and PERB reversed, concluding that the subject sentence unambiguously granted the Village the right to discontinue—or continue—all noncontractual past practices in its discretion, not just those relating to grievances.

---

**2.** The ALJ concluded, and PERB agreed, that PERB had jurisdiction over this dispute under Civil Service Law § 205 (5) (d) because, as the parties stipulated, the terminated fringe benefits were not granted pursuant to the parties' collective bargaining agreement but, rather, were extended pursuant to a practice developed over time (*see, Matter of Chalachan v City of Binghamton*, 55 NY2d 989). Since this is not a breach of contract dispute, PERB's jurisdictional limitation was not triggered (*see*, Civil Service Law § 205 [5] [d]; *cf., Matter of Civil Serv. Empls. Assn. v New York State Pub. Empl. Relations Bd.*, 207 AD2d 589, 591, *lv denied* 84 NY2d 808).

Focusing on the clear language of the subject sentence and the absence of any evidence of the parties' negotiating history relative to their intent underlying that sentence, PERB determined that the placement of the sentence in the Agreement's grievance procedure article rather than in the management rights article did not create an ambiguity or reflect an intent to narrow the plain meaning of the words employed. Indeed, PERB reasoned that the placement of this collective bargaining waiver in the grievance procedure article was logical since that procedure permitted grievances to be filed about changes in noncontractual past practices, with the final determination to be made by the Village Manager. Thus, PERB concluded that the PBA had waived the Village's obligation to negotiate changes in past practices.

The PBA and its labor representative then commenced this CPLR article 78 proceeding seeking to annul PERB's determination. Supreme Court annulled PERB's determination, finding that it was not reasonable or rational. The court concluded that—when read in the context of the procedural article in which it appears—the subject sentence is ambiguous. In the absence of any proof of the parties' intent supporting PERB's expansive .interpretation or language in other articles of the Agreement to support a management right to terminate all past practices, the court ruled that the subject sentence could not be interpreted as a knowing, intentional waiver by the PBA of the Village's collective bargaining obligation as to all past practices. Thus, the court narrowly construed the sentence, limiting its effect to the context of grievance resolution. PERB now appeals and the Village appears as *amicus curiae*.

We reverse and dismiss the PBA's petition, finding that PERB's determination represents a rational, supportable interpretation of the parties' collective bargaining agreement. Under the Taylor Law, public employers must collectively negotiate the terms and conditions of employment (*see*, Civil Service Law § 204). While a public employer commits an improper practice by unilaterally changing noncontractual practices concerning existing terms and conditions of employment (*see*, *Matter of McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326, 332), an employee organization may release a public employer of its statutory duty to negotiate changes in mandatorily negotiable past practices (*see*, *Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685, *affd* 61 NY2d 1001). Indeed, such a bargained-for waiver satisfies the employer's bargaining obligation (*see*, *Matter of Police Benevolent Assn.*

*[County of Nassau]*, 31 PERB ¶ 3064; *see also, Matter of Sachem Cent. Teachers Assn. [Sachem Cent. School Dist.]*, 21 PERB ¶ 3021).

Here, all parties agree that by the subject sentence, PBA effected a collective bargaining waiver. The disputed issue is whether PBA waived the Village's obligation to negotiate changes in "[a]ll past practices", as the sentence provides and as PERB ruled, or whether PBA merely waived all past practices pertaining to grievance procedures, as the ALJ and Supreme Court concluded. The language itself is unqualified and, thus, our focus is on whether the context in which it appears required that it be narrowly construed and limited.

In our view, this dispute poses questions involving the interpretation of a collective bargaining agreement which are within PERB's area of expertise and, thus, its interpretation is entitled to substantial deference and should be upheld if it is rational, reasonable, legally permissible and is supported by the text of the Agreement (*see, Matter of Greece Support Serv. Empls. Assn. v Public Empl. Relations Bd..* 250 AD2d 980, 982; *see also, Matter of County of Nassau [Nassau Community Coll.] v New York State Pub. Empl. Relations Bd.*, 76 NY2d 579, 585-586; *Matter of Century Operating Corp. v Popolizio*, 60 NY2d 483, 488; *Matter of Pell v Board of Educ.*, 34 NY2d 222, 231; *Matter of Mohawk Val. Nursing Home v New York State Publ. Empl. Relations Bd.*, 185 AD2d 6, 8; CPLR 7803 [3]). PERB's determination that the unambiguous language of the subject sentence expressly referring to "[a]ll past practices" included in the parties' negotiated agreement should be given effect as written is neither irrational nor unreasonable and is soundly based upon the unqualified language employed. Further, while giving primary consideration to the words used in the subject sentence, PERB's analysis did not focus on the sentence in isolation but, in fact, properly considered its placement in the article and in the Agreement as a whole. We find persuasive PERB's reasoning that, as grievance procedures are a union's primary means of addressing both contractual and noncontractual complaints arising within the employer-employee relationship, it was logical and consistent for the parties to have entrusted in the grievance procedure article, the final disposition of noncontractual past practices grievances to the Village Manager and to have waived, in the same article, the Village's obligation to collectively bargain "[a]ll past practices".

Thus, logic does not compel the conclusion that the placement of this waiver in the grievance procedure article reflects an intent to narrow the plain meaning of the words and does

not support imposing a limitation of its meaning to past practices relating to grievances only. We also agree with PERB's assessment that placement of the subject sentence in the management rights article would "certainly have been logical", arguably preferable, but cannot conclude that PERB's conclusion was irrational since placement of the subject clause in the grievance procedure article was also logical. Indeed, narrowly construing the subject sentence to the Village's management power in the context of grievance resolution would render it largely superfluous, since Article XIII separately grants the Village Manager the final disposition of all noncontractual grievances, which would include noncontractual grievances regarding past grievance practices. Accordingly, since PERB rationally concluded that the PBA unambiguously waived the Village's statutory obligation to negotiate all noncontractual past practices, not just past practices related to grievance procedures (*see, Matter of Civil Serv. Empls. Assn. v Newman, supra,* at 686; *see also, Matter of Frontier Ins. Co. v Koppell,* 225 AD2d 93, 95, *lv denied* 90 NY2d 806; *Matter of Civil Serv. Empls. Assn. v Kinsella,* 194 AD2d 1054, 1056), this Court will not substitute its judgment for that of PERB (*see, Matter of Save Our Forest Action Coalition v City of Kingston,* 246 AD2d 217, 221). PERB's interpretation of the subject collective bargaining agreement is neither arbitrary nor capricious and is upheld (*see, Matter of Greece Support Serv. Empls. Assn. v Public Empl. Relations Bd., supra,* at 982).

Mercure, J. P., Peters, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, and petition dismissed.