[799 NYS2d 7]

In the Matter of PROFESSIONAL STAFF CONGRESS-CITY UNIVER-
SITY OF NEW YORK, Petitioner, v NEW YORK STATE PUBLIC
EMPLOYMENT RELATIONS BOARD et al., Respondents.

First Department, June 7, 2005

## APPEARANCES OF COUNSEL

*Kennedy Schwartz & Cure, P.C.*, New York City (*Stuart Lichten* and *Arthur Z. Schwartz* of counsel), for petitioner.

*Sandra M. Nathan*, Albany, for New York State Public Employment Relations Board, respondent.

*Eliot Spitzer, Attorney General*, New York City (*Jean Lin, Caitlin Halligan, Frederick P. Schaffer [CUNY]* and *Katherine Raymond] [CUNY]* of counsel), for City University of New York, respondent.

*James R. Sandner*, Latham (*Marilyn S. Dymond* of counsel), for New York State United Teachers, amicus curiae.

## OPINION OF THE COURT

SULLIVAN, J.

Petitioner Professional Staff Congress-City University of New York (PSC) is the certified collective bargaining representative of approximately 17,000 instructional and administrative employees of the City University of New York (CUNY). Respondent New York State Public Employment Relations Board (PERB) is the agency charged with administering the New York Public Employees' Fair Employment Act (Civil Service Law § 200 *et seq.* [the Taylor Law]). In March 1972, prior to the October 1973 execution of the first collective bargaining agreement (CBA) between PSC and CUNY, the latter adopted a policy on copyrights and patents, revised in 1986, with respect to faculty members. Under the policy on copyrights, the materials produced with the use of funds administered by CUNY's Research Foundation belonged to the author, but royalties were to be "divided between the college and the individual(s) based on the respective contributions made by each party." Under the patent policy, all rights to inventions "supported in any way" by CUNY were to be assigned to the Research Foundation, with the proceeds divided 35% to the inventor and 65% to the

inventor's college. This policy remained in effect until November 2002.

On July 31, 2000, the 1996-2000 CBA between CUNY and PSC expired. Negotiations for a new contract began shortly thereafter, and in September PSC delivered a series of proposals to CUNY, several of which touched directly or indirectly on intellectual property issues. For instance, Proposal 116 stated, "All material created by an instructional staff member shall be the intellectual property of the instructional staff member exclusively." In November 2000, without notice to PSC, CUNY distributed to members of its own Intellectual Property Committee a draft Intellectual Property Policy changing its existing policy. PSC was not invited to participate in the discussion.

Section III of the new policy, as eventually adopted, made extensive changes in the rules concerning ownership of intellectual property, giving far broader rights to CUNY. The policy also created a new dispute resolution mechanism, which ignored the dispute resolution process existing under the expired CBA between CUNY and PSC. As negotiations continued for a new CBA, PSC made a presentation with respect to its Proposal 116 concerning intellectual property; CUNY's Vice Chancellor for Legal Affairs responded that "[i]ntellectual [p]roperty [p]olicy will be set by the [Board of Trustees] . . . . This is not a collective bargaining issue." On May 16, 2001, CUNY released its Draft Revised Intellectual Property Policy with a covering memorandum speaking of faculty meetings to be held throughout the fall of 2001, followed by final approval by CUNY's trustees. PSC objected to the proposal to adopt an intellectual property policy without agreement in collective bargaining. On November 6, 2001, PSC filed an improper labor practice charge with PERB, alleging that CUNY violated Civil Service Law § 209-a (1) (d) by refusing to bargain as to the terms of its Intellectual Property Policy. On January 3, 2002, CUNY released a second revised draft of the Intellectual Property Policy.

On March 1, 2002, after more than 18 months of negotiation, CUNY and PSC agreed to a final tentative CBA, subject to membership ratification and CUNY Board approval. At that time, CUNY's proposed Intellectual Property Policy remained in draft form. Two months later, CUNY released a third revised draft of its Intellectual Property Policy; its Trustees, however, took no action before the summer recess. In late June, the 2000-2002 CBA, with an expiration date of October 31, 2002, was ratified by PSC's membership and approved by CUNY's trust-

ees. Before signing the CBA, PSC withdrew its demands with respect to the intellectual property issue, stating that the withdrawal was "without prejudice" to its improper labor practice charge. In September 2002, PSC requested that the parties open negotiations for the 2002-2004 CBA by discussing the Intellectual Property Policy, which had yet to be adopted. CUNY refused to negotiate.

On November 18, 2002, 18 days after the expiration of the 2000-2002 CBA, the CUNY trustees adopted the final draft of the Intellectual Property Policy, which, inter alia, expanded CUNY's copyright policy to all intellectual property produced by members of CUNY, rather than just to material developed under grants administered by the Research Foundation. It also awarded far broader ownership rights to CUNY than had previously existed, changed the division of compensation arising from intellectual property and created a new dispute resolution procedure as to intellectual property issues. On January 10, 2003, PSC amended its improper labor practice charge to reflect the attempt to bargain as part of the new contract negotiations and to include claims regarding CUNY's unilateral adoption of the policy.

A hearing on the improper labor practice charge was held before a PERB Administrative Law Judge (ALJ), who issued a decision on July 1, 2003 finding that CUNY violated section 209-a (1) (d) "by refusing to bargain with the PSC about those aspects of the intellectual property policy relating to compensation and the dispute resolution procedure." The ALJ held that article 2 of the CBA[1] did not, as argued by CUNY, waive "PSC's right to bargain concerning mandatory subjects affected by

---

1. Article 2 of the first CBA entered into by CUNY and PSC in 1973 and included in each subsequent CBA provides, in relevant part:

"2.2 The entire Agreement between the parties consists of the terms herein stated, and this Agreement terminates all prior Agreements and understandings. All Bylaws, policies and resolutions of the Board . . . as currently in effect, or as the same may be hereinafter adopted, supplemented or amended, shall be subject to the said stated terms of this Agreement.

"2.3 Nothing contained in this Agreement shall be construed to diminish the rights granted under the Bylaws of the Board to the entities and bodies within the internal structure of CUNY so long as such rights are not in conflict with a stated term of this Agreement.

"2.4 The rights, functions and powers of the Board and its officers and agents, and of the officers of CUNY, under the applicable law of the State and the Bylaws of the Board, including the Board's right to alter or waive existing Bylaws or policies in ac-

CUNY's intellectual property policy, either prior or subsequent to its implementation, once the CBA has expired," noting that "[s]uch a waiver must be clear, unmistakable and without ambiguity." The ALJ reasoned that although CUNY was contractually privileged by article 2 of the expired CBA "to act unilaterally" in the implementation of the Intellectual Property Policy, this waiver did not permit CUNY to refuse to bargain as to the terms of the policy after the expiration of the CBA, and ordered CUNY, on demand, to bargain with PSC on those aspects of the policy concerning compensation and dispute resolution.

CUNY filed exceptions to the ALJ's determination that article 2 did not constitute a waiver surviving the expiration of the 2000-2002 CBA. PSC filed cross exceptions, alleging that the ALJ erred in finding that CUNY had the contractual right to implement the Intellectual Property Policy and in failing to restore the status quo as it existed before CUNY's implementation of the new policy. On March 26, 2004, PERB issued its decision and order affirming the ALJ's finding that CUNY was contractually privileged to implement an Intellectual Property Policy, but reversing the ALJ's finding that CUNY had violated its bargaining obligation when it refused to negotiate over the compensation and dispute resolution aspects of that policy after expiration of the 2000-2002 CBA. Emphasizing that "Article 2.4 vests in CUNY the right to adopt and implement alterations to existing procedures or policies, upon notice to and consultation with PSC," PERB found a clear and explicit waiver of PSC's right to negotiate "alterations to existing procedures or policies" even after expiration of the CBA. In holding that article 2 continued to bind PSC by operation of law after expiration of the CBA, PERB relied upon Civil Service Law § 209-a (1) (e)[2] (the *Triborough* Amendment) (*see Matter of County of Niagara*

---

cordance with the procedures specified in the Bylaws shall remain vested in the Board and in said officers and agents, subject to the following: . . .

"(c) In the event it is proposed that a Bylaw, procedure or policy respecting a term or condition of employment of all or some of the employees covered by this Agreement be adopted, amended or rescinded by resolution of the Board, the PSC shall be given notice and an opportunity to consult in respect of said action prior to said action being taken or becoming effective in the manner specified below . . . ."

**2.** Under the statute, it is an improper employer practice "to refuse to continue all the terms of an expired agreement until a new agreement is negotiated, unless the employee organization which is a party to such agreement has, during such negotiations or prior to such resolution of such negoti-

*v Newman*, 104 AD2d 1, 4 [1984]). On April 22, 2004, PSC commenced the instant article 78 proceeding challenging PERB's determination. Supreme Court transferred the matter to this Court pursuant to CPLR 7804 (g).

PSC argues that PERB's determination may be reviewed for errors of law, citing *Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.* (75 NY2d 619 [1990]). As PSC correctly notes, "statutory construction is a function for the courts; PERB is accorded no special deference in the interpretation of statutes" (*id.* at 626). Courts will set aside a PERB determination if it "was 'affected by an error of law' " (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404 [1979], quoting CPLR 7803 [3]).

Respondents CUNY and PERB counter that judicial review of PERB's determination in an improper labor practice proceeding is limited to whether the determination is supported by substantial evidence and that PERB's interpretation of the Taylor Law is entitled to "substantial deference," citing *Matter of Patrolmen's Benevolent Assn. of Vil. of Walden v Kinsella* (263 AD2d 885, 888 [1999]; *see Matter of Civil Serv. Empls. Assn. v Newman,* 88 AD2d 685 [1982], *affd* 61 NY2d 1001 [1984]). Respondents argue that more than pure statutory interpretation is involved since PERB interpreted the CBA in reviewing the improper practice charge, taking into account the parties' 30-year history of negotiation, which involves a factual issue. In any event, respondents argue, citing *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.* (48 NY2d 398 [1979], *supra*), that since the Taylor Law as opposed to other statutes is involved, PERB's exercise of its expertise is especially entitled to substantial deference (*see also Matter of Lippman v Public Empl. Relations Bd.*, 263 AD2d 891, 893 [1999]).

With respect to the latter argument, the Court of Appeals has offered guidance in *Matter of Rosen v Public Empl. Relations Bd.* (72 NY2d 42, 47-48 [1988]):

"An administrative agency's interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies

---

ations, engaged in conduct violative of subdivision one of section two hundred ten of this article."

upon the special competence the agency is presumed to have developed in its administration of the statute. Where interpretation 'involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data' within the agency's particular expertise (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459), great deference is accorded the agency's judgment (*see, Matter of Incorporated Vil. of Lynbrook v New York State Pub. Employment Relations Bd.*, 48 NY2d 398, 404 [prohibited subjects of bargaining]; *Matter of West Irondequoit Teachers Assn. v Helsby*, 35 NY2d 46, 50-51 [mandatory subjects of bargaining]). On the other hand, where as here, the question is one of pure statutory construction 'dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence' (*Kurscics v Merchants Mut. Ins. Co., supra*, at 459), judicial review is less restricted as ' "statutory construction is the function of the courts" ' (*Matter of Howard v Wyman*, 28 NY2d 434, 438, quoting *Matter of Mounting & Finishing Co. v McGoldrick*, 294 NY 104, 108; *see, Matter of Town of Mamaroneck PBA v New York State Pub. Employment Relations Bd.*, 66 NY2d 722, 724)."

PERB's determination that article 2 constitutes a waiver of PSC's right to negotiate while the CBA was in effect poses questions of law and fact involving the interpretation of the CBA and the history of the parties' negotiations over the years, matters that are within PERB's expertise. Thus, in light of the standard announced in *Rosen*, its interpretation is entitled to substantial deference and should be upheld if it is rational, reasonable and supported by the text of the CBA (*see e.g. Matter of Patrolmen's Benevolent Assn. of Vil. of Walden v Kinsella*, 263 AD2d 885 [1999], *supra*). However, PERB's determination that the *Triborough* Amendment is applicable to both employers and employees post CBA expiration presents a pure question of statutory interpretation based on undisputed facts and is entitled to little or no deference.

The Taylor Law provides, in part (Civil Service Law § 200):

"The legislature of the state of New York declares that it is the public policy of the state and the purpose of this act to promote harmonious and co-

operative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. These policies are best effectuated by . . . requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees which have been certified or recognized."

The Act further provides that a public employer is required "to negotiate and enter into written agreements with [certified] employee organizations in determining . . . terms and conditions of employment" (Civil Service Law § 204 [2]). It is an improper practice under the Act for a public employer "to refuse to negotiate in good faith with the duly recognized or certified representatives of its public employees" (Civil Service Law § 209-a [1] [d]). In granting public employee organizations the right to bargain, the Taylor Law at the same time denies those organizations the right to strike (Civil Service Law § 210). These provisions are modeled on the National Labor Relations Act (NLRA) (29 USC § 151 *et seq.*), which guarantees private sector employees the right "to bargain collectively through representatives of their own choosing" (29 USC § 157). The NLRA makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees" (29 USC § 158 [a] [5]).

Here, as PERB correctly held, article 2 of the CBA expressly authorized CUNY to amend and implement unilaterally its Intellectual Property Policy while the CBA was in effect, provided it first consulted with PSC. The question presented is whether PERB's determination—that the existence of this right of unilateral policy-making necessarily constituted a waiver of PSC's right to negotiate changes in the Intellectual Property Policy affecting employee compensation and dispute resolution—is supported under the applicable standard of review.

As the Court of Appeals has recently held, the Taylor Law "requires public employers to bargain in good faith concerning all terms and conditions of employment. As we have time and again underscored, the public policy of this State in favor of collective bargaining is 'strong and sweeping.' The presumption in favor of bargaining may be overcome only in 'special circumstances' where the legislative intent to remove the issue from mandatory bargaining is 'plain' and 'clear' or where a specific statutory directive leaves 'no room for negotiation' " (*Matter of*

*City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73, 78-79 [2000] [citations omitted]; *see Matter of City of Mount Vernon v Cuevas*, 289 AD2d 674, 675 [2001], *lv denied* 97 NY2d 613 [2002]).

Still, an employee representative may waive Taylor Law rights (*see Matter of Patrolmen's Benevolent Assn. v Kinsella, supra,* 263 AD2d at 887) by evidence of an "intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it" (*Werking v Amity Estates*, 2 NY2d 43, 52 [1956], quoting Whitney on Contracts, at 273 [4th ed 1946]) that is "clear, unmistakable and without ambiguity" (*Matter of Civil Serv. Empls. Assn. v Newman, supra,* 88 AD2d at 686). As even PERB has itself recognized, "Management rights and zipper clauses are frequently cited as the dual bases for a defense of waiver by agreement and are most often rejected. Without supporting evidence in other substantive provisions of the contract, the parties' negotiating history, or past practice, catchall contract clauses are not sufficient to evidence a clear and unmistakable waiver" (*Matter of County of Putnam [Putnam County Unit, Local 840, Civ. Serv. Empls. Assn.],* 18 PERB ¶ 4565, at 4637 [1985]).

PSC argues that article 2.4 is not an unambiguous, intentional relinquishment of its right to bargain over intellectual property issues because the article "merely states the obvious in boilerplate terms" that despite "the introduction of a new participant in institutional relations, PSC, the 'rights, functions and powers' of CUNY's Board of Trustees remain as they were, 'under the applicable law of the State and the Bylaws of the Board.' " But PSC does not identify any specific subject area of bargaining, or even refer to bargaining or state that it is waiving any issue at all. It maintains that the use of the phrase "respecting a term or condition of employment" in the article is overly broad and ambiguous and thus violates the rule implicit in *Matter of Auburn Educ. Secretaries & Aides Assn. (Auburn Enlarged City School Dist.)* (25 PERB ¶ 3055 [1992]) that waivers of the right to bargain will be found only where the language unequivocally delineates the specific areas over which obligatory bargaining is prohibited.

In our view, article 2's provision that all matters respecting a term or condition of employment not covered by the CBA are reserved to CUNY's Board of Trustees satisfies the clear, unmistakable and unambiguous test of showing waiver. PERB has held that just as an employee representative has authority

to waive the Taylor Law right to bargain a specific issue, it "also ha[s] the authority to waive the right to bargain concerning any and all terms and conditions of employment not addressed in the [CBA]" (*Matter of Sachem Cent. Teachers Assn.* [*Sachem Cent. School Dist.*], 21 PERB ¶ 3021, at 3042 [1988]).

The Board's right to adopt, alter or implement policies "respecting a term or condition of employment" is subject to only two conditions: that PSC "be given notice and an opportunity to consult" and that the new policy is not "in conflict with a stated term of this Agreement." Article 2.4 (c) (v) also sets forth the procedures that CUNY must follow to allow PSC the opportunity to consult before the Trustees act. It further provides that if these conditions are met, PSC's "consent to the Board action shall not be required prior to such action being taken or becoming effective."

Since it cannot be seriously argued that the new Intellectual Property Policy, which impacts on the terms and conditions of employment, is covered by the CBA or conflicts with a stated term thereof, and since CUNY satisfied its obligation to give PSC notice and an opportunity to comment on the proposed policy before its implementation, CUNY had the contractual right under article 2 to implement a new intellectual property policy without PSC's consent. In this regard, the waiver determination is buttressed by the fact that for 30 years PSC never attempted to negotiate the intellectual property issue.

In our view, the pivotal question in this dispute is the rationality of PERB's determination that PSC's waiver continued in effect when, after the relevant CBA had expired, it sought to bargain regarding the Intellectual Property Policy during negotiations for both the 2000-2002 CBA and its successor. Respondents argue that Civil Service Law § 209-a (1) (e), the *Triborough* Amendment, which, as noted, makes it an improper practice for a public employer or its agents deliberately "to refuse to continue all the terms of an expired agreement until a new agreement is negotiated," requires that the status quo be maintained during the postexpiration period of the CBA while a successor agreement is being negotiated (*see Matter of Civil Serv. Empls. Assn., Inc., AFSCME, Local 1000, AFL-CIO, Suffolk Educ. Local 870, Deer Park Unit [Deer Park Union Free School Dist.]*, 28 PERB ¶ 3005 [1995]; *Matter of Waterford Teachers Assn. [Waterford-Halfmoon Union Free School Dist.]*, 27 PERB ¶ 3070 [1994]; *Matter of Sachem Cent. Teachers Assn., supra*).

Respondents claim that outside of improper conduct by the employee representative (*see* Civil Service Law § 210 [1]), the only exception to the *Triborough* doctrine is in instances where the CBA contains an explicit "sunset" provision or other language indicating the parties' intent that a particular contractual provision not continue pending negotiation of a successor agreement. Respondents maintain that application of the *Triborough* doctrine serves the Taylor Law's purpose of securing "harmonious and cooperative" labor relations (*see* Civil Service Law § 200), thereby preserving the status quo as to existing terms and conditions of employment during the period of negotiations for a successor agreement (*see Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.*, 2 NY3d 513 [2004]).

In *Matter of New York City Tr. Auth. v State of N.Y., Pub. Empl. Relations Bd.* (232 AD2d 492, 493 [1996]), the Second Department, in rejecting the same argument as is advanced here by respondents, stated:

> "Contrary to the [Transit Authority's] contentions, TSO [the collective bargaining representative] was not precluded by Civil Service Law § 209-a (1) (e) from seeking to represent [certain unrepresented] employees as the provisions thereof apply only to 'a public employer or its agents' who may not refuse to continue all the terms of an expired agreement until a new agreement is negotiated. This provision has no application to TSO, which is not a public employer or an agent thereof."

While substantial evidence supports PERB's finding that article 2 contains a waiver, its holding that the waiver of PSC's right to negotiate on intellectual property policy extended past the CBA's expiration is antithetical to the Taylor Law's overriding policy mandate in favor of collective bargaining. Each CBA provided that it would be in effect through a specified expiration date. Given this clause, PERB improperly shifted the burden of proof from CUNY to PSC in finding that "there is no language in Article 2, or elsewhere in the parties' [CBA], which limits the effectiveness of Article 2 to the term of any [CBA]." Instead, PERB should have considered the absence of any language in the article extending its application beyond the stated expiration date. This would have been more consistent with the strong public policy in favor of collective bargaining. A bargaining waiver provision should not be interpreted to survive

expiration unless the contrary is expressly stated in the CBA (*see e.g. Matter of Levittown Union Free School Dist. [Nassau Educ. Ch., Civ. Serv. Empls. Assn.]*, 13 PERB ¶ 3014 [1980]).

Moreover, in applying the *Triborough* Amendment in the circumstances to both PSA and CUNY, PERB erred as a matter of law. By its explicit terms, Civil Service Law § 209-a (1) (e) applies only to employers, making it improper for a public employer or its agents deliberately "to refuse to continue all the terms of an expired agreement until a new agreement is negotiated." Clause (e) was added to protect employees, not employers. When the Legislature inserted clause (e) in subdivision (1) of section 209-a, it did not insert a parallel provision in subdivision (2), which lists the requirements imposed on employee representatives (*Matter of City of Kingston [Local 461 of Intl. Assn. of Fire Fighters, City of Kingston]*, 18 PERB ¶ 3036 [1985]). That the *Triborough* doctrine is primarily a protection for employee representatives and not, as PERB views it, an imposition of reciprocal obligations to maintain the status quo is fortified by a recent Court of Appeals decision. In *Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.* (*supra*, 2 NY3d at 521) the Court noted that the *Triborough* doctrine "follows from the proposition that 'the statutory prohibition against an employee organization resorting to self help by striking imposes a correlative duty upon a public employer to refrain from altering terms and conditions of employment unilaterally during the course of negotiations' " (quoting *Matter of Triborough Bridge & Tunnel Auth. [Dist. Council 37 & Local 1396]*, 5 PERB ¶ 3037, at 3064 [1972]).

Finally, it should be noted, under PERB's interpretation, PSC's only recourse as far as the issue of intellectual property is concerned is first to negotiate and attempt to alter the provisions of article 2 to eliminate the waiver. However, as long as the waiver is in effect, CUNY would have no incentive to renegotiate article 2, since its power to change policies unilaterally would continue until a new CBA is reached. The suggestion that PSC demand that CUNY negotiate article 2 and, failing to negotiate a change, commence an impasse proceeding would only prolong the matter, thereby undermining the public policy of encouraging collective bargaining by forcing PSC to bargain about the right to bargain.

We have examined respondents' other arguments and find them without merit.

Accordingly, PSC's petition to set aside the determination of respondent PERB, dated March 26, 2004, which reversed in

part the decision of its Administrative Law Judge, dated July 1, 2003, and dismissed petitioner PSC's improper labor practice charge in its entirety (in a proceeding transferred to this Court by order of Supreme Court, New York County [Herman Cahn, J.], entered October 25, 2004), should be granted, on the law, without costs or disbursements, and the matter remanded to PERB for a determination not inconsistent herewith.

Motion seeking leave to appear as amicus curiae granted.

TOM, J.P., MARLOW, NARDELLI and WILLIAMS, JJ., concur.

Petition to set aside the determination of respondent New York State Public Employment Relations Board, dated March 26, 2004, granted, on the law, without costs or disbursements, and the matter remanded to the New York State Public Employment Relations Board for a determination not inconsistent with the decision and order herein. Motion seeking leave to appear as amicus curiae granted.