■ In the Matter of COUNTY OF SARATOGA et al., Petitioners, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [802 NYS2d 257]—

Mercure, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found petitioners guilty of an improper practice charge.

This dispute involves a policy implemented in July 2002 by petitioners which restricted the times and places that employees could use telephones at the Saratoga County Correctional Facility to make personal calls. Respondent Saratoga County Deputy Sheriff's Benevolent Association (hereinafter DSBA) filed an improper practice charge against petitioners, asserting, among other things, that the new telephone policy represented a change from past practice and that petitioners had violated Civil Service Law § 209-a (1) (d) by unilaterally implementing the policy without negotiation. Petitioners answered and raised the affirmative defense that article XIV of the parties' collective bargaining agreement, entitled "Past Practice Clause," deprived respondent Public Employment Relations Board (hereinafter PERB) of jurisdiction. That clause provides:

"All terms and conditions of employment previously granted to the employees by the Employer, unless specifically excluded by or in conflict with this Agreement, shall be continued except where it is determined by the Department Head that the work load or the efficiency of the operation is impaired thereby."

An Administrative Law Judge (hereinafter ALJ) denied the objection to PERB's jurisdiction, reasoning that a general past practice clause does not divest PERB of jurisdiction, and that although the DSBA had filed grievances under article XIV, a conditional dismissal and merits deferral to the parties' contractual grievance procedure was inappropriate because that procedure provided only for advisory, as opposed to binding, arbitration (*see Matter of Town of Yorktown Police Benevolent Assn. [Town of Yorktown]*, 34 PERB ¶ 4559 [2001]; *Matter of United Univ. Professions [State of New York]*, 30 PERB ¶ 3019 [1997]; *Matter of City of Buffalo [Fire Dept.] [Buffalo Professional Firefighters Assn., Inc., Local 282, I.A.F.F., AFL-CIO]*, 17 PERB ¶ 3090, at 3138 [1984]). The ALJ further determined that the waiver contained in article XIV was not triggered because that clause permits only the "Department Head" to unilaterally change past practices and petitioners failed to establish that Richard Emery, the corrections administrator for the facility who the ALJ determined had implemented the July 2002 policy changing petitioners' rules regarding phone use, was the "Department Head" within the meaning of article XIV. Ultimately, the ALJ concluded both that the employees' personal use of telephones was a mandatory subject of negotiation and that petitioners had committed an improper practice under the Taylor Law by failing to negotiate the new policy. Upon consideration of petitioners' exceptions to the decision of the ALJ, PERB ruled that the Saratoga County Sheriff was the Department Head to whom article XIV refers and that the Sheriff had effectively made the determination to issue the July 2002 policy. PERB concluded in addition that the past practice clause was applicable to the subject matter of the charge. It nonetheless rejected petitioners' affirmative defense relying on article XIV because "the proof [did] not show that a determination was made by either Emery or the Sheriff that the workload or the efficiency of the operation was impaired by permitting unit employees['] use of tower and multipurpose room telephones for personal telephone calls." Accordingly, PERB affirmed the ALJ's finding of an improper practice. Petitioners thereafter commenced this CPLR article 78 proceeding to review PERB's determination and Supreme Court transferred the matter to this Court pursuant to CPLR 7804 (g).

Petitioners argue that the application of article XIV presents an issue of contract interpretation that is beyond the jurisdiction of PERB and, in any event, PERB's failure to enforce article XIV was irrational. We reject petitioners' arguments that matters of contract interpretation are wholly outside of PERB's jurisdiction and that PERB was required to dismiss the charge.

Because we conclude, however, that PERB's interpretation of article XIV of the parties' collective bargaining agreement was irrational, we now annul its determination.

Civil Service Law § 205 (5) sets forth PERB's powers and functions. As pertinent here, Civil Service Law § 205 (5) (d) provides that PERB "shall not have authority to enforce an agreement between an employer and an employee organization and shall not exercise jurisdiction over an alleged violation of such an agreement that would not otherwise constitute an improper employer or employee organization practice." Thus, when an improper practice charge—such as the DSBA's allegation that petitioners unilaterally altered the terms and conditions of employment by issuing the July 2002 policy (*see* Civil Service Law § 209-a [1] [d])—distills to an assertion that the employer has breached the collective bargaining agreement, PERB lacks jurisdiction to entertain the charge (*see Matter of Roma v Ruffo*, 92 NY2d 489, 496-497 [1998]; *Matter of Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Nassau Local 830 v New York State Pub. Empl. Relations Bd.*, 207 AD2d 589, 590-591 [1994], *lv denied* 84 NY2d 808 [1994]). In other words, PERB does not have "jurisdiction over a failure to bargain charge 'when the parties' collective bargaining agreement provides the charging party *with a reasonably arguable source of right* with respect to the subject matter of the charge' " (*Matter of Roma v Ruffo, supra* at 498, quoting *Matter of Nassau Ch. Civ. Serv. Empls. Assn., Local 1000 [County of Nassau]*, 25 PERB ¶ 3071, at 3146, 3147 [1992]).

Here, the parties' collective bargaining agreement does not address the employee phone use that is the subject of the charge. Rather, the DSBA alleges that petitioners violated its statutory rights by failing to bargain over a past practice that was *not* expressly covered by the agreement. Thus, "this [matter] is not a breach of contract dispute . . . [and] PERB's jurisdictional limitation was not triggered" (*Matter of Patrolmen's Benevolent Assn. of Vil. of Walden v Kinsella*, 263 AD2d 885, 886 n 2 [1999]; *see Matter of Local 589, Intl. Assn. of Firefighters, AFL-CIO v Cuevas*, 271 AD2d 535, 536-537 [2000]; *Matter of Police Assn. of Greenburgh [Town of Greenburgh]*, 28 PERB ¶ 4630 [1995]; *Matter of Civil Serv. Empls. Assn, Local 1000, AFSCME, AFL-CIO [County of Nassau]*, 27 PERB ¶ 4639 [1994]).

Petitioners' argument that article XIV deprived PERB of jurisdiction is misplaced. Article XIV reflects an agreement by petitioners and the DSBA that petitioners have the right to unilaterally alter past practices under certain circumstances, thus waiving the DSBA's statutory rights when the agreed-

upon circumstances are met. While the question of whether this provision applies to the issuance of the July 2002 policy does give rise to an issue of contract interpretation, PERB has long ruled that it has jurisdiction to interpret an agreement to determine whether a charging party has waived its statutory rights, including the right to negotiate on a past practice that is the subject of an improper practice charge alleging a unilateral change of a term and condition of employment (*see e.g. Matter of Clarkstown Teachers Assn. [Clarkstown Cent. School Dist.]*, 24 PERB ¶ 3047 [1991]; *Matter of St. Lawrence County [St. Lawrence County Ch. of Civ. Serv. Empls. Assn.]*, 10 PERB ¶ 3057 [1977]). As PERB has explained, a general maintenance of benefits "clause may . . . create a contractual right that complements the statutory right to the maintenance of past practices. The contractual right, however, does not extinguish the statutory right" (*Matter of City of Buffalo [Buffalo Professional Firefighters Assn., Local 282, I.A.F.F., AFL-CIO]*, 17 PERB ¶ 3090, *supra* at 3138 [1984]; *see also Matter of Town of Yorktown Police Benevolent Assn. [Town of Yorktown]*, 34 PERB ¶ 4559 *supra* [2001]).*

While PERB had jurisdiction to interpret the waiver in the article XIV past practice clause, we conclude that annulment is nonetheless required because PERB's interpretation of that clause was irrational. As explained above, article XIV provides that petitioners have the right to unilaterally alter past practices "where it is determined *by the Department Head* that the work load or the efficiency of the operation is impaired thereby" (emphasis added). To meet their burden of establishing the elements of their affirmative defense (*see Matter of Middle Country Cent. School Dist. Chief & Head Supervisory Unit of Suffolk Educ. Local 870 [Middle Country Cent. School Dist.]*, 23 PERB ¶ 3045 [1990]), petitioners introduced testimony at the hearing before the ALJ that the policy was issued with the approval of the Department Head after an internal investigation resulted in

---

* Notwithstanding the foregoing, we note that in determining whether deferral to the parties' grievance procedures is appropriate, PERB normally conditionally dismisses and defers a unilateral change of past practice charge where the parties' agreement contains a contractual maintenance of benefits clause because such a clause "constitute[s] an arguable source of right to a union with regard to an [employer's] alleged change in terms and conditions of employment" (*Matter of Town of Yorktown Police Benevolent Assn. [Town of Yorktown]*, 32 PERB ¶ 4525 at 4608 [1999]). It did not defer here on the ground that the parties' agreement provided only for advisory arbitration and, pursuant to PERB's longstanding merits deferral policy, an award is not dispositive of a charge unless it is rendered in a binding grievance arbitration procedure (*see Matter of United Univ. Professions [State of New York]*, 30 PERB ¶ 3019, *supra* [1997]).

findings that the use of the telephones for personal calls in certain areas was "excessive" and, therefore, "not in the best interest of the County for safety reasons and the efficiency of the operation of the facility." Specifically, the determination was made that the excessive phone use led to inadequate supervision of inmate housing units. The DSBA's witness conceded that even one correction officer talking on the phone in a work area would be distracting to a fellow officer working nearby. Indeed, PERB itself asserts in its brief that there was an established past practice of employees using the telephones to make personal calls, that petitioners' investigation revealed that unit employees had been using telephones for calls ranging from 30 seconds to one hour and that "[c]onsidering such usage excessive, Colonel Emery, . . . with the approval of the Sheriff, issued the July 8, 2002 policy." We note that there is no dispute that excessive phone use would affect the facility's efficiency. Nevertheless, PERB concluded without explanation in its determination that neither Emery nor the Sheriff had made the requisite determination that the use of telephones for personal calls impaired the workload or efficiency of the operation.

PERB now asserts before us that it properly concluded that petitioners—in failing to submit evidence of inmate incidents that occurred because of excessive phone use and the documentary evidence such as the telephone bills or call logs relied upon in making the determination to issue the policy—did not establish that the workload or efficiency of the facility has been impaired by employee phone use. Article XIV, however, does not require a showing of inmate incidents or that *PERB* make the requisite determination of impairment of efficiency or workload; rather, it provides that the *Department Head* must make that determination. In our view, because the parties to the agreement left determinations regarding whether particular practices negatively affect the efficiency of the operation solely to the discretion of the Department Head, PERB may not substitute its own judgment for that of the Department Head absent evidence of irrationality or impropriety. The unchallenged testimony at the hearing revealed that Emery concluded, after an internal investigation and based upon documentary evidence regarding telephone use at the facility, that excessive use of telephones for personal calls was affecting the efficiency of the operation of the facility. Indeed, PERB concedes that the Department Head issued the policy regarding phone use after the evidence revealed in the internal investigation convinced him that the phone use was excessive. By nevertheless insisting, in spite of that concession, that the requisite determination was never made, PERB effectively argues that petitioners were required to

submit sufficient evidence to allow it to make its own de novo determination. This argument excises the term "by the Department Head" from article XIV in derogation of basic contract interpretation principles and therefore must fail (*see generally Travelers Cas. & Sur. Co. v Certain Underwriters at Lloyd's of London*, 96 NY2d 583, 594 [2001]; *Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46 [1956]). Inasmuch as PERB's determination stands in contradiction to the undisputed proof at the hearing that the Department Head did make the required finding, the determination is irrational as well as arbitrary and capricious, and must be annulled (*cf. Matter of Patrolmen's Benevolent Assn. of Vil. of Walden v Kinsella*, 263 AD2d 885, 888-889, *supra* [1999]).

Cardona, P.J., Peters, Spain and Carpinello, JJ., concur. Adjudged that the determination is annulled, without costs, and petition granted.