[857 NE2d 1108, 824 NYS2d 577]

In the Matter of PROFESSIONAL STAFF CONGRESS-CITY UNIVERSITY OF NEW YORK, Respondent, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Appellants.

Argued September 6, 2006; decided October 17, 2006

## POINTS OF COUNSEL

*Sandra M. Nathan,* Albany, and *William L Busler* for New York State Public Employment Relations Board, appellant. I. The Taylor Law's collective bargaining system rests on mutual rights and obligations of employers and unions. (*Board of Educ. for City School Dist. of City of Buffalo v Buffalo Teachers Fedn.,* 89 NY2d 370; *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v Cuevas,* 276 AD2d 184, 96 NY2d 711; *Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.,* 2 NY3d 513.) II. The Public Employment Relations Board's decision that Civil Service Law § 209-a (1) (e) continues the collective bargaining agreement article 2 waiver as part of the status quo in effect during the *Triborough* period is rational and advances the policies of the Taylor Law. III. The Appellate Division's decision that Civil Service Law § 209-a (1) (e) did not continue the collective bargaining agreement article 2 waiver as part of the status quo in effect during the relevant *Triborough* periods is in error. (*Matter of Rosen v Public Empl. Relations Bd.,* 72 NY2d 42; *Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.,* 2 NY3d 513; *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v Cuevas,* 276 AD2d 184; *People v Santi,* 3 NY3d 234; *Riley v County of Broome,* 95 NY2d 455; *Matter of New York City Tr. Auth. v State of N.Y., Pub. Empl. Relations Bd.,* 232 AD2d 492; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York,* 79 NY2d 39; *Matter of Roma v Ruffo,* 92 NY2d 489; *Matter of Cobleskill Cent. School Dist. v Newman,* 105 AD2d 564, 64 NY2d 610.) IV. The Appellate Division's decision disrupts the mutuality that is essential to the Taylor Law's collective bargaining system and thereby undermines the Legislature's goal of harmonious and cooperative labor relations. (*Antinore v State of New York,* 49 AD2d 6, 40 NY2d 921.)

*Eliot Spitzer, Attorney General,* New York City (*Robert Easton, Richard Dearing, Caitlin Halligan* and *Jean Lin* of counsel), *Frederick P. Schaffer* and *Katherine Raymond* for City University of New York, appellant. I. The Appellate Division erred in failing to defer to the Public Employment Relations Board's determination that a waiver of bargaining rights, like all other terms of an expired collective bargaining agreement, continues in effect during the status quo period. (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398; *Matter of Lippman v Public Empl. Relations Bd.,* 263 AD2d 891; *Matter of Milonas v Public Empl. Relations Bd.,* 225 AD2d 57; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660; *Matter of Village of Fairport v Newman,* 90 AD2d 293; *Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.,* 2 NY3d 513; *Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v State of New York,* 78 NY2d 143; *Matter of New York City Tr. Auth. v State of N.Y., Pub. Empl. Relations Bd.,* 232 AD2d 492.) II. The Appellate Division's decision, if affirmed, would undermine the overarching purposes of the Taylor Law and frustrate the legitimate expectations of public employers that employees have a reciprocal obligation to maintain the status quo. (*Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.,* 2 NY3d 513; *Board of Educ. for City School Dist. of City of Buffalo v Buffalo Teachers Fedn.,* 89 NY2d 370.)

*Schwartz, Lichten & Bright, P.C.,* New York City (*Stuart Lichten* of counsel), for respondent. I. The Appellate Division correctly set aside the Public Employment Relations Board's determination. (*Matter of Webster Cent. School Dist. v Public Empl. Relations Bd. of State of N.Y.,* 75 NY2d 619; *Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.,* 85 NY2d 480; *Matter of City School Dist. of City of Elmira v New York State Pub. Empl. Relations Bd.,* 74 NY2d 395; *Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd.,* 66 NY2d 722; *Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.,* 48 NY2d 398; *Matter of City of Mount Vernon v Cuevas,* 289 AD2d 674, 97 NY2d 613; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563; *805 Third Ave. Co. v M.W. Realty Assoc.,* 58 NY2d 447; *Non-Linear Trading Co. v Braddis Assoc.,* 243 AD2d 107.) II. Article 2.4 of the collective bargaining agreement is not a waiver. (*Nagel v D*

*& R Realty Corp.*, 99 NY2d 98; *Macchirole v Giamboi*, 97 NY2d 147; *Metropolitan Edison Co. v NLRB*, 460 US 693; *Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685; *Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd.*, 82 AD2d 691.)

*James R. Sandner,* Latham, and *Marilyn S. Dymond* for New York State United Teachers, amicus curiae. I. The Appellate Division's reversal of the Public Employment Relations Board's (PERB) decision should be upheld, because PERB's ruling undermines the stability of the collective bargaining process. (*Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.*, 2 NY3d 513.) II. The Appellate Division's reversal of the Public Employment Relations Board's (PERB) decision should be upheld, because PERB's ruling is contrary to public policy and inconsistent with its own precedent. (*Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v Cuevas,* 276 AD2d 184, 96 NY2d 711; *Matter of New York City Tr. Auth. v State of N.Y., Pub. Empl. Relations Bd.,* 232 AD2d 492.) III. The Appellate Division's reversal of the Public Employment Relations Board's (PERB) decision should be upheld, because PERB's ruling is not defensible on the proffered ground of "mutuality."

*Greenberg Burzichelli & Greenberg P.C.,* Lake Success (*Harry Greenberg* of counsel), *Eddie M. Demmings,* New York City, and *Mary J. O'Connell* for Municipal Labor Committee, amicus curiae. I. The *Triborough* doctrine does not extend a union's bargaining waiver post-contract expiration. II. A waiver to bargain cannot be given *Triborough* effect. (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.,* 6 NY3d 563; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.,* 95 NY2d 73; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.,* 75 NY2d 660.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Georgia Pestana* of counsel), for City of New York, amicus curiae. The *Triborough* amendment imposes reciprocal obligations on public employers and unions to maintain the status quo between the expiration of a collective bargaining agreement and the execution of a successor agreement. (*Association of Surrogates & Supreme Ct. Reporters within City of N.Y. v State of*

*New York,* 78 NY2d 143; *Matter of ATM One v Landaverde,* 2 NY3d 472; *Matter of Tompkins County Support Collection Unit v Chamberlin,* 99 NY2d 328; *Riley v County of Broome,* 95 NY2d 455; *Matter of Pirro v Angiolillo,* 89 NY2d 351; *People v Santi,* 3 NY3d 234; *Williams v Williams,* 23 NY2d 592; *Matter of New York State Assn. of Criminal Defense Lawyers v Kaye,* 96 NY2d 512; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York,* 79 NY2d 39; *Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.,* 2 NY3d 513.)

**OPINION OF THE COURT**

Graffeo, J.

In this CPLR article 78 proceeding, the issue is whether the Public Employment Relations Board (PERB) abused its discretion when, in dismissing an improper practice charge brought by a union, it concluded that the union's waiver of the right to negotiate certain subjects remained in effect after expiration of the parties' collective bargaining agreement.

Petitioner Professional Staff Congress (PSC) is the certified collective bargaining representative of approximately 17,000 instructional and administrative employees of respondent City University of New York (CUNY). PSC and CUNY entered into their first collective bargaining agreement (CBA) in 1973 and have had a succession of agreements since then. In 1972, before the first CBA with PSC, CUNY adopted an intellectual property policy addressing ownership of copyrights and patents, the payment of royalties and other issues related to intellectual property developed by CUNY employees. This policy, with revisions, remained in effect until November 2002. The intellectual property policy was never a subject of collective bargaining between PSC and CUNY, nor was it ever incorporated into any of the parties' CBAs.

After the 1996-2000 CBA expired and while the parties were negotiating a new agreement, CUNY began the process of amending its intellectual property policy. In response, in June 2001 PSC demanded negotiation concerning the intellectual property policy. CUNY declined to address the policy in collective bargaining, asserting that article 2 of the expired CBA constituted a waiver by the union of the right to negotiate particular items, including the intellectual property policy. Article 2 has been a component of the parties' agreements since the first CBA in 1973. It authorizes the CUNY Board of Trustees to alter

existing bylaws or policies "respecting a term or condition of employment" after giving PSC "notice and an opportunity to consult" but without obtaining PSC's consent, provided the Board action is not inconsistent with a term of the CBA.[1] CUNY maintained that article 2 allows the CUNY Board of Trustees to change bylaws and policies that relate to matters not addressed in the CBA, such as the intellectual property policy, without negotiating with PSC. Relying on the principle that terms of an expired CBA continue after expiration of the agreement while the parties are negotiating a successor, CUNY contended that the article 2 waiver remained in effect during negotiations for a successor agreement and precluded the union from demanding that CUNY collectively bargain modifications to the intellectual property policy.

In November 2001, the union filed an improper practice charge with PERB, claiming that CUNY's refusal to negotiate modifications to the intellectual property policy was an improper practice under Civil Service Law § 209-a (1) (d), a Taylor Law provision that requires the parties to negotiate in good faith. The charge was not resolved at that time, however, because the parties reached agreement on a new CBA covering August 2000 to October 2002. Prior to executing the new contract, PSC withdrew its proposal concerning the intellectual property policy along with all of its other outstanding bargaining demands. The new CBA carried article 2 forward from the prior contract unchanged.

Just before the 2000-2002 CBA was to expire, PSC sent a letter to CUNY demanding that the parties begin collective

---

**1.** Article 2.4 of the CBA provides:

"The rights, functions and powers of the Board and its officers and agents, and of the officers of CUNY, under the applicable law of the State and the Bylaws of the Board, including the Board's right to alter or waive existing Bylaws or policies in accordance with the procedures specified in the Bylaws shall remain vested in the Board and in said officers and agents, subject to the following . . .

"(b) The Board shall not adopt any new or amended Bylaws, policy or resolution which conflicts with a stated term of this Agreement . . .

"(c) In the event it is proposed that a Bylaw, procedure or policy respecting a term or condition of employment of all or some of the employees covered by this Agreement be adopted, amended or rescinded by resolution of the Board, the PSC shall be given notice and an opportunity to consult in respect of said action prior to said action being taken or becoming effective, in the manner specified below . . .

"it being understood that the PSC's consent to the Board's action shall not be required prior to such action being taken or becoming effective, unless the Board action shall be inconsistent with a stated term of this Agreement."

bargaining for the successor agreement by discussing the intellectual property policy. At that time, CUNY was close to completing its procedure for unilateral alteration of the policy but had yet to formally adopt the revised policy. CUNY responded by again referencing article 2 of the CBA, submitting that it constituted a waiver by the union of the right to collectively bargain changes to the intellectual property policy. PSC maintained that it had not waived collective bargaining rights in article 2.

When CUNY adopted the new intellectual property policy in November 2002, PSC filed an amended improper practice charge reasserting the claims previously filed with PERB. After a hearing, the Administrative Law Judge (ALJ) agreed with CUNY that the union waived its right to negotiate concerning the intellectual property policy in article 2 of the CBA. But the ALJ held that the waiver expired when the CBA expired, reasoning that any other interpretation of the contract would result in a waiver of rights "in perpetuity," an outcome that would be contrary to the policies underlying the Taylor Law. As such, the ALJ found that CUNY's refusal to collectively bargain the intellectual property policy after expiration of the CBA amounted to an improper practice.

Both parties pursued administrative appeals to PERB, which modified the holding of the ALJ. PERB upheld the ALJ's interpretation of article 2 that the union had clearly and unambiguously waived the right to negotiate certain subjects, including the intellectual property policy. But PERB disagreed with the ALJ on the duration of the waiver, concluding that the waiver remained in effect after expiration of the CBA. PERB noted that, under Civil Service Law § 209-a (1) (e), known as the *Triborough* amendment, all terms of a collective bargaining agreement are deemed to continue after expiration of a CBA. It therefore determined that both parties are obligated to comply with the CBA and maintain the "status quo" while a new agreement is being negotiated. Finding that the article 2 waiver was part of the status quo for these parties and that it relieved CUNY of the obligation to collectively bargain its intellectual property policy, PERB dismissed PSC's improper practice charge.

In this article 78 proceeding commenced by PSC challenging PERB's ruling, the Appellate Division granted PSC relief by annulling PERB's determination and holding that CUNY had committed an improper practice when it refused to negotiate the intellectual property policy. First, the Appellate Division

reasoned that bargaining waivers should not be interpreted to survive a CBA absent an express provision to that effect. Second, because Civil Service Law § 209-a (1) (e) requires employers to continue all the terms of an expired collective bargaining agreement but does not address the obligations of employees, the Appellate Division concluded that no reciprocal duty is imposed on employees. The Court therefore held that the article 2 waiver did not continue after expiration of the CBA and CUNY could not rely on it to justify its refusal to collectively bargain the terms of the intellectual property policy. We granted CUNY and PERB leave to appeal and we now reverse and reinstate PERB's determination.

The resolution of an improper practice charge is generally a matter within PERB's sound discretion (*see Matter of Poughkeepsie Professional Firefighters' Assn., Local 596, IAFF, AFL-CIO-CLC v New York State Pub. Empl. Relations Bd.*, 6 NY3d 514 [2006]). We also defer to PERB's special knowledge and expertise in determining what constitutes the "status quo" that the parties must maintain after expiration of a collective bargaining agreement (*see Matter of Town of Southampton v New York State Pub. Empl. Relations Bd.*, 2 NY3d 513 [2004]). The determination in this case implicated PERB's discretionary authority in both areas.

PSC alleged that CUNY committed an improper practice by refusing to negotiate in good faith, as required by Civil Service Law § 209-a (1) (d). PERB's denial of the improper practice charge turned on its finding that the union waived its right to demand bargaining concerning the intellectual property policy in article 2 of the expired CBA. "A waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it . . . . Such a waiver must be clear, unmistakable and without ambiguity" (*Matter of Civil Serv. Empls. Assn. v Newman*, 88 AD2d 685, 686 [3d Dept 1982] [internal quotation marks and citation omitted], *affd for reasons stated* 61 NY2d 1001 [1984]; *see Matter of Board of Coop. Educ. Servs. Sole Supervisory Dist., Onondaga & Madison Counties v New York State Pub. Empl. Relations Bd.*, 82 AD2d 691 [3d Dept 1981]).

Here, in assessing whether there was a waiver, PERB began by analyzing the language in article 2 of the CBA, which specifically grants CUNY the right to make unilateral decisions concerning the alteration of "Bylaws, policies and resolutions . . . respecting a term or condition of employment," provided

that the alteration does not "conflict[ ] with a stated term" of the CBA and CUNY has complied with specified notice and consultation procedures.[2] Because the provision explicitly refers to "terms and conditions of employment" and is not confined to management prerogatives, it is evident that the clause is more than a boilerplate management rights clause. Further, article 2 states that "PSC's consent to the Board's action shall not be required prior to such action being taken or becoming effective, unless the Board action shall be inconsistent with a stated term of this Agreement."

The intellectual property policy, first adopted by CUNY in 1972, fell squarely within the purview of article 2 since it was never made part of the CBAs between PSC and CUNY and its alteration did not conflict with any term of the CBA. CUNY was therefore not required under the CBA to obtain the union's consent to any change in the intellectual property policy, nor was it obligated to negotiate modification of the policy with the union. Under the circumstances, PERB reasonably interpreted article 2 as a waiver by PSC of its right to demand negotiation concerning matters not addressed in the CBA, including the intellectual property policy.

The issue therefore distills to whether the article 2 waiver remained in effect after expiration of the CBA. PERB's conclusion that it did was based, in part, on Civil Service Law § 209-a (1) (e), which requires an employer to continue all the terms of an expired CBA while a new agreement is being negotiated. This mandate was added to the Taylor Law in 1982 (*see* L 1982, ch 868). Even prior to the amendment, however, PERB required that employers continue the "terms and conditions" of employment after expiration of a CBA, thereby maintaining the "status quo" during collective bargaining of a new agreement. Under this PERB policy, referred to as the *Triborough* doctrine because it was first articulated in a 1972 PERB determination entitled *Matter of Triborough Bridge & Tunnel Auth.* (*District Council 37 & Local 1396*) (5 PERB ¶ 3037 [1972]), terms and conditions of employment were carried forward, regardless of whether they had been embodied in a CBA. PERB interpreted the Taylor Law as imposing reciprocal obligations, taking the view that "[t]he duty to maintain the *status quo* devolves not only upon the public employer, but also upon the employee organization" (*Matter*

---

**2.** PSC has not asserted that CUNY violated the notice and consultation requirements.

*of Livingston, Steuben, Wyoming BOCES [Livingston, Steuben, Wyoming BOCES Teachers Assn.],* 8 PERB ¶ 3019, at 3028 [1975], *determination annulled on different grounds in Matter of Board of Coop. Educ. Servs. of Rockland County v New York State Pub. Empl. Relations Bd.,* 41 NY2d 753 [1977]). In cases in which members of a bargaining unit changed the status quo after expiration of a CBA PERB has concluded that the employer was free to do the same and could not be charged with an improper practice for altering terms and conditions of employment (*see Matter of Somers Cent. School Dist. [Somers Faculty Assn.],* 9 PERB ¶ 3061 [1976]; *Matter of Village of Val. Stream [Local 342, Long Is. Pub. Serv. Empls. Union],* 6 PERB ¶ 3076 [1973]).

With the enactment of Civil Service Law § 209-a (1) (e), the Legislature made it "an improper practice for a public employer . . . deliberately . . . to refuse to continue all the terms of an expired agreement until a new agreement is negotiated." Thus, "[i]n 1982, the Legislature expressed its approval of the *Triborough* doctrine by expanding it to include not just mandatory subjects of negotiation, but all terms of a collective bargaining agreement" (*Town of Southampton,* 2 NY3d at 521). Although there are minor differences between the PERB policy and the *Triborough* amendment, both furthered the same objective: "to preserve the status quo in situations where a collective bargaining agreement between a public employer and its employees has expired and a new one has yet to be agreed upon" (*Matter of Goodman [Barnard Coll.—Commissioner of Labor],* 95 NY2d 15, 22 [2000]).

Civil Service Law § 209-a (1) (e) did not restrict PERB's authority either to define the status quo or to require that both parties adhere to it.[3] To the contrary, the legislative history of the provision indicates that it was intended "to enhance the negotiating process by preserving the status quo until a new agreement is reached by the concerned parties" and merely

---

**3.** While it is true that Civil Service Law § 209-a (1) (e) makes it an improper practice for an employer to fail to continue the terms of an expired agreement but is silent as to whether it is an improper practice for a union to do so, it does not follow that Taylor Law obligations are not reciprocal. Given the structure of the *Triborough* amendment, it may well be that a union cannot be found to have committed an improper practice for failing to adhere to a term of an expired CBA. We need not resolve this question here because this case does not involve a charge against a union; rather, the issue was whether the employer committed an improper practice when, in declining to negotiate the intellectual property policy, it relied on a term of the expired CBA.

"enact[ed] into law what ha[d] become a standard, though not mandatory practice" (Sponsor's Mem, Bill Jacket, L 1982, ch 868, at 7). Because some contract provisions place obligations on employees or restrict union rights, the practical effect of continuing all the terms of a CBA during the status quo period is that mutual obligations are imposed on both employers and employees—a result consistent with the statute and PERB's long-standing application of the *Triborough* doctrine.

In resolving PSC's claim that CUNY failed to negotiate in good faith in violation of Civil Service Law § 209-a (1) (d), PERB assessed whether CUNY was required to collectively bargain the intellectual property policy by reviewing the parties' CBA, bargaining history and past practices in light of well-established PERB precedent. PERB has long held that parties can effectively prevent certain terms of a CBA from being continued after expiration of the contract under the *Triborough* amendment by using language that causes the term to "sunset" or expire at the conclusion of the CBA or at some other point in time (*see Matter of Waterford Teachers Assn. [Waterford-Halfmoon Union Free School Dist.]*, 27 PERB ¶ 3070 [1994]). For example, language stating that a term will continue "until the commencement of the negotiations for a successor to this agreement" will cause the term to "sunset" at the conclusion of the CBA (*see Matter of Sachem Cent. Teachers Assn. [Sachem Cent. School Dist.]*, 21 PERB ¶ 3021, at 3041 [1988]). Similarly, where parties agree that the term will continue "for the life of this agreement," they indicate an intent that it will not be continued after the agreement expires (*see Matter of Police Benevolent Assn. of Police Dept. of County of Nassau [County of Nassau (Nassau County Police Dept.)]*, 30 PERB ¶ 4717, at 5013 [1997]).

Here, PSC and CUNY knew how to include a sunset clause in a contractual provision that they did not wish to carry into the status quo period as they had inserted such clauses in prior agreements. For example, article 40 of the 1996-2000 agreement states: "This provision will sunset on July 30, 2000, unless renewed by the parties" (the 1996-2000 CBA expired on July 31, 2000). The fact that there is no "sunset" language in article 2 suggests that the parties intended the waiver provision to remain in effect after expiration of the CBA. And nothing in the parties' past practices or bargaining history indicates a contrary intent. More than 25 years elapsed without PSC's demanding collective bargaining on the intellectual property issue and dur-

ing that period CUNY had previously amended the policy under the notice and consultation procedures set forth in article 2 without objection by PSC.

Since CUNY was required under Civil Service Law § 209-a (1) (e) to continue the terms of the expired CBA, PERB reasonably concluded that CUNY's continuation of article 2 was not an improper practice. In other words, PERB appropriately exercised its discretion to define the status quo for these parties, finding that the article 2 waiver continued in effect during the status quo period—a determination that is entitled to "great deference" (*Town of Southampton*, 2 NY3d at 520).

The rule espoused by PSC—that a waiver provision should be deemed to expire at the conclusion of the CBA unless the parties include language indicating otherwise—is inconsistent with PERB precedent as well as Civil Service Law § 209-a (1) (e) because, under the statute, the assumption is that all terms of a CBA remain in effect during collective bargaining of a successor agreement. The concern that continuation of such a clause after expiration of a CBA will result in a waiver "in perpetuity" is unfounded. The article 2 waiver is itself a mandatory subject of negotiation and the union is free to seek alteration or elimination of that language through the collective bargaining process. In fact, during negotiations for the 2000-2002 agreement, PSC submitted a proposal to alter article 2 but withdrew that proposal when the parties reached agreement.[4] To pursue collective bargaining of the intellectual property policy in the future, PSC may propose that article 2 be amended to exempt the intellectual property policy from its scope or to include a sunset clause that would allow negotiation of the topic during the status quo period. Since it is subject to the give and take of collective bargaining, the article 2 waiver is no more likely than any other term of the parties' CBA to continue in perpetuity.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, READ and R.S. SMITH concur; Judge PIGOTT taking no part.

Order reversed, etc.

---

4. In its demands for collective bargaining concerning the intellectual property policy in 2001 and 2002, PSC did not link the intellectual property proposal with its article 2 proposal, nor did CUNY refuse to collectively bargain with respect to the article 2 proposal.