[988 NE2d 481, 965 NYS2d 746]

In the Matter of CITY OF YONKERS, Respondent, v YONKERS FIRE FIGHTERS, LOCAL 628, IAFF, AFL-CIO, Appellant.

Argued February 13, 2013; decided April 2, 2013

**POINTS OF COUNSEL**

*Meyer, Suozzi, English & Klein, P.C.*, New York City (*Richard S. Corenthal* and *Joni H. Kletter* of counsel), for appellant. I. New York State courts favor arbitration and discourage judicial interference. (*Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO*, 99 NY2d 1; *Steelworkers v Warrior & Gulf Nav. Co.*, 363 US 574; *Matter of Board of Educ. of Yonkers City School Dist. v Yonkers Fedn. of Teachers*, 40 NY2d 268; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273; *Matter of Board of Educ. of Dover Union Free School Dist. v Dover-Wingdale Teachers' Assn.*, 61 NY2d 913; *Matter of Board of Educ. of Norwood-Norfolk Cent. School Dist. [Hess]*, 49 NY2d 145; *Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132; *Matter of Union Free Dist. #15, Town of Hempstead v Lawrence Teachers Assn.*, 33 AD3d 808; *Matter of City of Oswego [Oswego City Firefighters Assn., Local 2707]*, 93 AD3d 1243.) II. The collective bargaining agreement is still in effect pursuant to Civil Service Law § 209-a (1) (e), the Triborough Law and tier 5 legislation. (*Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd.*, 7 NY3d 458; *Matter of Board of Trustees of Maplewood-Colonie Common School Dist. [Maplewood Teachers' Assn.]*, 57 NY2d 1025; *County of Nassau v New York State Pub. Empl. Relations Bd.*,

151 AD2d 168; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39; *Matter of Cobleskill Cent. School Dist. v Newman*, 105 AD2d 564, 64 NY2d 1071; *Matter of County of Niagara v Newman*, 104 AD2d 1; *Smith v People*, 47 NY 330; *Matter of Hartnett v Village of Ballston Spa*, 152 AD2d 83, 75 NY2d 711.) III. Affirming the Appellate Division, Second Department's decision will result in an unconstitutional impairment of contract. (*United States Trust Co. of N. Y. v New Jersey*, 431 US 1; *Equipment Mfrs. Inst. v Janklow*, 300 F3d 842; *General Motors Corp. v Romein*, 503 US 181; *Educational Empls. Credit Union v Mutual Guar. Corp.*, 50 F3d 1432; *Energy Reserves Group, Inc. v Kansas Power & Light Co.*, 459 US 400; *Condell v Bress*, 983 F2d 415; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 940 F2d 766; *University of Hawai'i Professional Assembly v Cayetano*, 183 F3d 1096; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39; *American Fedn. of State, County & Mun. Empls. v City of Benton, Ark.*, 513 F3d 874.) IV. The Appellate Division, Second Department, incorrectly held that arbitration of this grievance is barred by statute. (*Matter of City of Oswego [Oswego City Firefighters Assn., Local 2707]*, 93 AD3d 1243; *Matter of Peters v Union-Endicott Cent. School Dist.*, 77 AD3d 1236; *Matter of Village of Fairport v Newman*, 90 AD2d 293; *Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington*, 30 NY2d 122; *Matter of City of Plattsburgh [Plattsburgh Police Officers Union AFSCME Local 82]*, 250 AD2d 327; *Matter of County of Chautauqua v Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, County of Chautauqua Unit 6300, Chautauqua County Local 807*, 8 NY3d 513; *Matter of City of Long Beach v Civil Serv. Empls. Assn., Inc.—Long Beach Unit*, 8 NY3d 465; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563.)

*Bond, Schoeneck & King, PLLC*, Garden City (*Terence M. O'Neil* and *Christopher T. Kurtz* of counsel), for respondent. The Appellate Division, Second Department, correctly held that a stay of arbitration pursuant to CPLR 7503 was proper. (*Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509; *Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132; *Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273; *Matter of City of Oswego [Oswego City Firefighters Assn., Local 2707]*, 93 AD3d 1243; *Matter*

of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd., 75 NY2d 660; Matter of Peters v Union-Endicott Cent. School Dist., 77 AD3d 1236; Matter of City of Plattsburgh [Plattsburgh Police Officers Union AFSCME Local 82], 250 AD2d 327; Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York, 79 NY2d 39; Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd., 7 NY3d 458; Matter of Cobleskill Cent. School Dist. v Newman, 105 AD2d 564.)

Hinman Straub, P.C., Albany (Joseph M. Dougherty of counsel), for New York State Professional Firefighters Association, I.A.F.F., AFL-CIO, amicus curiae. I. The Second Department erred in holding that the collective bargaining agreement was not "in effect" for purposes of article 22 of the Retirement and Social Security Law pursuant to section 8 of part A of chapter 504 of the Laws of 2009. (Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd., 7 NY3d 458; Matter of Goodman [Barnard Coll.—Commissioner of Labor], 95 NY2d 15; Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York, 79 NY2d 39; Matter of City of Oswego [Oswego City Firefighters Assn., Local 2707], 93 AD3d 1243; United States Trust Co. of N. Y. v New Jersey, 431 US 1; General Motors Corp. v Romein, 503 US 181; Allied Structural Steel Co. v Spannaus, 438 US 234; Energy Reserves Group, Inc. v Kansas Power & Light Co., 459 US 400; Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York, 940 F2d 766; Donohue v Paterson, 715 F Supp 2d 306.) II. The Second Department erred in holding that arbitration of this dispute is barred by statute. (Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.], 90 NY2d 364; Board of Educ., Bellmore-Merrick Cent. High School Dist., Nassau County v Bellmore-Merrick United Secondary Teachers, 39 NY2d 167; Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1; Matter of New York City Dept. of Sanitation v MacDonald, 87 NY2d 650; Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y., 1 NY3d 72; Matter of City of Johnstown [Johnstown Police Benevolent Assn.], 99 NY2d 273.)

### OPINION OF THE COURT

Pigott, J.

At issue in this case is the meaning of the words "in effect" as contained in Laws of 2009, chapter 504 (part A, § 8), specifi-

cally whether expired collective bargaining agreements are "in effect" for purposes of that statute because of the so-called Triborough Law.

Petitioner, the City of Yonkers, and respondent, Yonkers Fire Fighters, Local 628, IAFF, AFL-CIO, entered into a collective bargaining agreement (CBA), dated July 1, 2002, which, by stipulation, was extended to June 30, 2009. In the CBA, the City agreed to offer its firefighters the option of enrolling in one of two retirement plans, and agreed that it would bear "the complete cost" of contributions, "pursuant to . . . State law."

In 2009, in response to the fiscal crisis, Governor Paterson and the legislature ended the right of newly hired firefighters to join such noncontributory pension plans. The legislature enacted article 22 of the Retirement and Social Security Law, effective in January 2010, which placed new members of the New York State and Local Police and Fire Retirement System in a new tier of pension benefits—tier 5—requiring members to contribute 3% of their salaries toward their pensions (*see* Retirement and Social Security Law § 1204).

The focus of this appeal is a narrow exception provided in section 8 of the 2009 legislation.

> "Notwithstanding any provision of law to the contrary, nothing in this act shall limit the eligibility of any member of an employee organization to join a special retirement plan open to him or her pursuant to a collectively negotiated agreement with any state or local government employer, where such agreement is *in effect* on the effective date of this act and so long as such agreement remains in effect thereafter; *provided, however, that any such eligibility shall not apply upon termination of such agreement* for employees otherwise subject to the provisions of article twenty-two of the retirement and social security law" (L 2009, ch 504, part A, § 8 [emphasis added]).

Following the 2009 legislation, no agreement on a new CBA was reached in Yonkers. The City, noting the June 30, 2009 termination date of the CBA, required firefighters who were hired after that date to pay 3% of their wages towards retirement benefits. In response, the Union filed an improper practice charge with the New York State Public Employment Relations Board (PERB), alleging that the City had erred in failing to apply the CBA to firefighters hired by the City after the CBA's

termination date. The Union relied on the exception contained in section 8, as well as Civil Service Law § 209-a (1) (e), often referred to as the Triborough Law.*

After PERB referred the matter to arbitration, the City commenced this proceeding for a permanent stay of arbitration on the ground that arbitration is barred by Civil Service Law § 201 (4) and Retirement and Social Security Law § 470. Supreme Court rejected this argument, and dismissed the proceeding; but the Appellate Division reversed, and granted the petition, holding that the statutes cited are a bar to arbitration. "[T]he CBA, which terminated by its own terms in June 2009, was no longer 'in effect' at the time of the effective date of article 22 of the Retirement and Social Security Law," with the result that "the exception set forth in section 8 of that article is inapplicable" (90 AD3d 1043, 1044-1045 [2d Dept 2011]). We granted the Union leave to appeal (19 NY3d 802 [2012]), and now affirm.

A grievance may be submitted to arbitration only if (1) it is lawful for the parties to arbitrate the dispute and (2) the parties agreed to arbitrate that kind of dispute (*see e.g. Matter of City of Johnstown [Johnstown Police Benevolent Assn.]*, 99 NY2d 273, 278 [2002]). The City argues that the first condition is not met, because arbitration of the present dispute is prohibited by statute.

Public employers executing a CBA are prohibited from negotiating and granting retirement benefits that are not already expressly provided under state law. (A CBA may provide for retirement benefits as authorized by law, which is why the CBA here was valid until article 22 was enacted.) Civil Service Law § 201 (4) prohibits the negotiation of "benefits provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees, or payment to retirees or their beneficiaries." Retirement and Social Security Law § 470 similarly proscribes "[c]hanges negotiated between any public employer and public employee . . . with respect to any benefit provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees or payment to retirees or their beneficiaries."

---

* *See Matter of Triborough Bridge & Tunnel Auth. (District Council 37 & Local 1396, Am. Fedn. of State, County & Mun. Empls., AFL-CIO)*, 5 PERB ¶ 3037 (1972), *confirming* 5 PERB ¶ 4505 (1972); *Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd.*, 7 NY3d 458, 466 (2006).

As the parties frame their dispute, whether the arbitration sought by the Union would amount to negotiation prohibited by these statutes depends on whether the CBA was "in effect" pursuant to section 8, when article 22 of the Retirement and Social Security Law became effective, or had terminated within the meaning of that statute. If it was not "in effect," then arbitration would be an attempt at negotiation of the 3% now imposed on new firefighters and is barred.

The Triborough doctrine, upon which the Union relies, was codified by the enactment of Civil Service Law § 209-a (*see* L 1982, ch 868). With an exception not applicable here, that section provides that it is "an improper practice for a public employer or its agents deliberately . . . to refuse to continue all the terms of an *expired* agreement until a new agreement is negotiated" (Civil Service Law § 209-a [1] [e] [emphasis added]). The law "requires an employer to continue all the terms of an expired CBA while a new agreement is being negotiated . . . [U]nder the statute, the assumption is that all terms of a CBA remain in effect during collective bargaining of a successor agreement" (*Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd.*, 7 NY3d 458, 466, 469 [2006]). The purpose is "to preserve the status quo in situations where a [CBA] between a public employer and its employees has expired and a new one has yet to be agreed upon" (*id.* at 467, quoting *Matter of Goodman [Barnard Coll.—Commissioner of Labor]*, 95 NY2d 15, 22 [2000]).

Because no successor CBA was negotiated in the present case, the Triborough Law would apply, and the CBA's terms would be continued, unless contradicted by statute. Here, however, the part of the CBA that required noncontributory plans is rendered unlawful by article 22 of the Retirement and Social Security Law, which prohibits such plans, unless the section 8 exception is applicable.

The Union argues that the section 8 exception applies because it extends to CBAs that have expired but are deemed to remain in effect because of the Triborough Law. This was not the legislature's intent. If the legislature had intended to invoke the Triborough doctrine, it would certainly have made that explicit. Instead, the legislature, having set forth the section 8 exception for CBAs that are "in effect," expressly states that eligibility to join a CBA's retirement plan "shall not apply upon termination of such agreement" (L 2009, ch 504, part A, § 8). This language makes clear that the legislature did not intend to apply the

exception to agreements that had expired and could only be deemed to continue through the Triborough Law.

This interpretation is further supported by the legislative history. Governor Paterson noted in a Program Bill Memorandum that section 8 of the bill ensures "that members of an employee organization that are eligible to join a special retirement plan pursuant to a collectively negotiated agreement with any state or local government employer, would be able to continue to enroll in that special plan after the enactment of this bill, *until the date on which such agreement terminates*" (Governor's Program Bill Mem, Bill Jacket, L 2009, ch 504 at 9 [emphasis added]). Again, the chosen language indicates that a noncontributory plan does not outlast the expiration of the CBA.

Under the Union's interpretation of the statute, the legislature would have been creating a loophole whereby a union, by the simple expedient of refusing to reach agreement on a new CBA, could ensure the continuation of noncontributory pension benefits to new hires, conceivably ad infinitum. Instead, it is clear that the legislature intended to honor only agreements providing for noncontributory status that had not expired at the time the statute became effective.

The Union further argues that if section 8 did not encompass a CBA deemed to continue under the Triborough Law, then section 8 would run afoul of the Contract Clause of the United States Constitution—"No State shall . . . pass any . . . Law impairing the Obligation of Contracts" (US Const, art I, § 10 [1]). This argument begs the question of whether the contract at issue here remains in effect. Under our analysis, there were no contractual obligations to impair.

Finally, we disagree with the dissent's position that the language of tier 6 (L 2012, ch 18, § 80) is evidence that, in enacting article 22 of the Retirement and Social Security Law, the legislature intended to authorize participation in noncontributory pension benefits pursuant to agreements that had expired. Significantly, the dissent points to no legislative history supporting its theory that the express references to "unexpired" CBAs were included in 2012 because the legislature reached a different policy judgment than it had in 2009. Rather, the natural inference is that the legislature intended to be more plain, the second time around, and avoid language that would invite disputes such as this.

We conclude that the exception to Retirement and Social Security Law article 22 contained in section 8 (L 2009, ch 504,

part A) does not apply to the CBA at issue here, so that the noncontributory pension benefits to which firefighters were entitled pursuant to the CBA are prohibited by article 22, despite the Triborough Law. Therefore, the arbitration sought by the Union is barred, as an impermissible negotiation of pension benefits, by Civil Service Law § 201 (4) and Retirement and Social Security Law § 470.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN (dissenting). Because I believe the majority has disregarded the plain language of the exception to Retirement and Social Security Law article 22 contained in section 8 of the enacting legislation (L 2009, ch 504, part A) and incorrectly applied a bar to arbitration, I respectfully dissent.

Article 15 of the CBA between the City and the Union provides that the City shall pay the full cost of pension contributions to the New York State Police and Fire Retirement System (PFRS) for all members of the Union. Article 15 states, in relevant part,

> "[m]embers shall be entitled, pursuant to existing State law . . . alternate optional retirement plans as follows: . . .

> "[a] Twenty (20) year retirement plan as authorized by law with the City pay[ing] the complete cost of said pension plan . . . and . . .

> "[a] Twenty-five (25) year retirement plan . . . to be paid for in full by the City."

Article 29 of the CBA sets forth that disputes between the parties are to be resolved through a multi-level grievance procedure, and unresolved grievances may be submitted for arbitration.

The majority errs in determining that the CBA was not "in effect" for purposes of article 22 of the Retirement and Social Security Law. Under the *Triborough* doctrine, it is improper for a public employer "to refuse to continue all the terms of an expired [employment] agreement until a new agreement is negotiated" (Civil Service Law § 209-a [1] [e]). Section 8 states that nothing in article 22 will prevent an employee from joining a special retirement plan pursuant to a CBA that is "in effect," mirroring our Court's language in *Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd.* (7 NY3d 458, 469 [2006]). This Court stated clearly in

*Matter of Professional Staff Congress* that "all terms of a CBA remain *in effect* during collective bargaining of a successor agreement" (7 NY3d at 469 [emphasis added]). Consequently, when the Yonkers CBA expired in June 2009, the agreement between the City and the Union continued to be in effect until a new CBA was negotiated (*see generally Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39, 45 [1992]).

It follows that the newly hired firefighters, who were employed under a CBA "in effect" within the meaning of well-known New York law, fall within the section 8 exception to the requirement of joining contributory retirement plans. Absent action by the legislature, the Court cannot ignore the provisions of the *Triborough* doctrine. The majority's interpretation of the statute, in reality, does just that. Under section 8, employees covered by CBAs, which are "in effect" and offer noncontributory pension plans, have the option of participating in such plans. It was unnecessary for the legislature to invoke the *Triborough* doctrine explicitly in section 8, as the majority's ruling suggests. The plain language of section 8 expresses the legislature's intention, and the similarity between the wording in section 8 and *Matter of Professional Staff Congress* cannot be ascribed to mere coincidence.

Moreover, when the legislature revisited the pension contribution issue by creating tier 6 in March 2012, the drafters changed the statutory language and specified that the exception to the 3% contribution applied to "unexpired" CBAs (L 2012, ch 18, § 80). The legislature also stated in the tier 6 language that members who join PFRS *after* the effective date of the legislation are not authorized to participate in specified noncontributory retirement plans (*id.*). None of this language was included in article 22 of the Retirement and Social Security Law. The contrast between the tier 5 and tier 6 statutory language is compelling evidence that the two statutes must be interpreted differently.

The proviso in section 8, "that any such eligibility shall not apply upon termination of such agreement," does not alter the analysis. Termination of a CBA is not the equivalent of expiration, and the legislature made clear with the tier 6 statutory language that they understood the term "expired" and its meaning. The "termination" language also does not render the "in effect" language meaningless, as they can and should be read together. The Governor's 2009 Program Bill Memorandum, the

only legislative history cited by the majority, in no way detracts from a harmonized view of these terms. It should be apparent, absent a strained interpretation inconsistent with the legislative language, that a terminated agreement under section 8 refers to an agreement that is superceded by a newly negotiated CBA. The majority's interpretation incorrectly adds the term "unexpired" to the section 8 language and imposes the legislature's newly created tier 6 rule on this earlier legislation.

While the controlling of governmental costs is a commendable aim, the majority's interpretation of the statute is belied by the language of section 8, which must control. The stated concern that a union would refuse to reach agreement on a new CBA to allow its new membership to participate in noncontributory pension plans (under the Union's interpretation of section 8) fails to accord with reality. This Court has previously explained in *Matter of Professional Staff Congress* that "[t]he concern that continuation of [a contract term] after expiration of a CBA will result in [the term being in effect] 'in perpetuity' is unfounded" because a party may propose that the term be amended to include a sunset clause or taken out during the course of future collective bargaining (7 NY3d at 469). Unmistakably, it is self-defeating for unions to forever defer negotiating new CBAs for the singular purpose of permitting its new members to participate in noncontributory pension plans.

Furthermore, in concluding that arbitration is barred by statute, the Court's ruling fundamentally misconstrues the nature of the present dispute as one involving the negotiation of retirement benefits. The majority relies on Civil Service Law § 201 (4) and Retirement and Social Security Law § 470 for the proposition that arbitration is prohibited. Civil Service Law § 201 (4) states "benefits provided by or to be provided by a public retirement system" are not to be "negotiated pursuant to this article, and any benefits so negotiated shall be void." Retirement and Social Security Law § 470 likewise conveys that "[c]hanges negotiated between any public employer and public employee . . . with respect to any benefit provided by or to be provided by a public retirement system . . . shall be prohibited."

Here, the Union is seeking arbitration to interpret an existing CBA provision, not to negotiate the terms of retirement benefits. This Court concluded in *Matter of City of Johnstown (Johnstown Police Benevolent Assn.)* (99 NY2d 273, 279 [2002]) that a dispute over the computation of certain retirement benefits in an existing CBA was not a "*negotiation* of a provision of a CBA

. . . , but the *interpretation* of a CBA provision." The inclusion of the special noncontributory pension plans in article 15 of the CBA was negotiated in 2002, and there was no prohibition against negotiating over whether to provide those plans at the time (*see* Retirement and Social Security Law §§ 384-d, 384-e). The Union is simply asking for the Court to require the City to adhere to the terms of the CBA. Enforcing the agreement's arbitration clause would not return the parties to the negotiation table. Today's ruling circumvents the arbitration process and is contrary to this Court's precedent which "has overwhelmingly rejected contentions by public employers that particular issues fall outside the scope of permissible grievance arbitration" (*Matter of Board of Educ. of Watertown City School Dist. [Watertown Educ. Assn.]*, 93 NY2d 132, 138-139 [1999]).*

Accordingly, because I believe the City and the Union should proceed to arbitration, I dissent and would reverse the order of the Appellate Division.

Judges Graffeo, Read and Smith concur with Judge Pigott; Chief Judge Lippman dissents and votes to reverse in an opinion in which Judge Rivera concurs.

Order affirmed, with costs.

---

* The Union's argument that preventing arbitration would be unconstitutional impairment of contract need not be reached under this analysis.