*511 Judgment, Supreme Court, Bronx County (Alexander W. Hunter, Jr., J.), entered December 6, 2012, denying the petition brought under CPLR article 78 to annul a portion of the interim decision and order of respondent the New York City Board of Collective Bargaining (the board or the BCB), dated June 29, 2011, which dismissed petitioner’s charges of an improper practice upon determining that respondent the City of New York (the City) was not required to negotiate its decision to reduce fire engine staffing levels, and dismissing the proceeding, unanimously affirmed, without costs.
Petitioner Uniformed Firefighters Association (UFA) serves as the collective bargaining representative for FDNY firefighters. Since the 1980s, there has been a dispute between the City and the firefighters’ unions concerning the City’s attempts to reduce the number of firefighters assigned to each engine.
On January 31, 1990, the City implemented a roster staffing program that reduced fire engine crews in certain companies from five to four firefighters per engine. Petitioner subsequently challenged this action as creating a safety threat to firefighters. In considering the challenge, the BCB directed a hearing to establish a record and determine whether a practical safety impact would result from the City’s action. The parties conducted safety impact hearings before a special trial examiner, but he died before issuing a decision for the board’s consideration. On January 30, 1996, the parties settled the matter by executing the Roster Staffing Agreement (the agreement); the agreement was to be effective for a 10-year term, expiring on January 31, 2006.
The agreement provided that “the [FDNY] will initially designate sixty (60) Engine Companies to be staffed with a fifth firefighter at the outset of each tour .... All other engine company staffing not so designated will remain at the maximum of five firefighters at the start of each tour.” During the term of the agreement, FDNY had the right to reduce the engine staffing levels in companies with five firefighters per engine if the level of firefighter medical leave exceeded a certain percentage.
The agreement contained the following provision in the eleventh paragraph: “ELEVENTH: By entering into this Stipulation of Settlement, the Union agrees to waive its right to file any litigation or grievance regarding the Department Roster Staffing program as set forth in the case docketed with the Office of Collective Bargaining as BCB-1265-90, or with regard to the practical impact of this agreement until January 31, 2006. Should a court of competent jurisdiction or any other adminis *512 trative entity, except for enforcement purposes, grant the right to initiate any such litigation or grievance within that time, this agreement will be terminated immediately. Should litigation or a grievance commence, this agreement or any portion thereof shall not be admissible in any court proceeding or other administrative forum. After the expiration of this Agreement, January 31, 2006, the City in view of factors including, but not limited to changes in technology, structural and non-structural fires, and response times, may wish to change staffing levels. In the event the City plans to make such changes, the parties will negotiate to the extent required by the New York City Collective Bargaining Law. Should differences between the parties arise, it is the intent of the parties to work expeditiously to resolve them.”
In October 2005, petitioner and the City agreed to extend the term of the agreement by five years to January 31, 2011.
In October 2010, the City notified petitioner that, following the agreement’s impending January 31, 2011 expiration date, the City planned to staff engines in certain companies with a minimum of four firefighters per engine at the beginning of each tour and others with five firefighter crews, effective February 1, 2011. The City noted that, while it was not obligated to bargain with the union over the changes, it was “willing to meet with the UFA to discuss any concerns the union may have.” The City gave petitioner a publication containing the FDNY’s guidelines and procedures for implementing the new staffing policy.
On January 31, 2011, petitioner, with the Uniformed Fire Officers Association (the UFOA), brought a combined improper practice and scope of bargaining petition to challenge the City’s decision to reduce the engine staffing levels at certain companies from five firefighter crews to four, beginning February 1, 2011. The petition challenged the City’s unilateral action as violative of both the agreement and the New York City Collective Bargaining Law (Administrative Code of City of NY § 12-301 et seq. [NYCCBL]).
In an interim decision and order dated June 29, 2011, the BCB, by a four-to-two vote, dismissed all challenges except the allegations concerning the practical impact of the City’s decision to reduce the engine staffing levels. The board also directed a hearing before a trial examiner to determine whether the reduction would have a safety impact that would require negotiations between the parties concerning implementation of the changes.
In its decision, the board found that the agreement contained *513 a “sunset” provision because paragraph Eleventh and the subsequent extension indicated an expiration date. Thus, any provision in the agreement to maintain the engine staffing levels had “sunset” — that is, terminated a benefit at a specific time or on a specific condition. The board rejected a reading of paragraph Eleventh as requiring the parties to negotiate post-expiration should the City decide to reduce engine staffing levels. This construction, the board held, would render the agreement’s expiration meaningless and would impose an absolute obligation on the City to bargain, where the language indicated only that the parties would bargain “to the extent required by the [NYCCBL].”
The board further found that the agreement allowed petitioner to file grievances after the expiration date, but that petitioner’s proposed reading would not similarly permit the City to act; thus, petitioner’s reading of the agreement would evince a lack of mutuality that could not have been the parties’ intent. The board also found that, based on its determination that paragraph Eleventh “on its face, constitutes a sunset provision,” neither maintenance of the status quo under Civil Service Law § 209-a (1) (e), nor the conversion theory of negotiability, applied.
Based on its own precedent, the board determined that the agreement was not incorporated into the parties’ collective bargaining agreement. The board further held that, consistent with its previous decisions and NYCCBL 12-307, fire engine staffing levels are a nonmandatory bargaining subject and the City was not required to bargain unless, following a hearing, the board found a practical safety impact. Thus, the board held that the City was not required to bargain, but directed a hearing regarding the safety impact on firefighters.
Petitioner then commenced this article 78 proceeding, seeking to annul the portion of the board’s decision finding that the agreement did not require the City to negotiate its decision to reduce fire engine staffing levels of certain companies.* Petitioner argued that the decision was arbitrary and capricious because it incorrectly interpreted paragraph Eleventh to mean that the agreement had expired and that it imposed no post-expiration obligation on the parties in the event the City reduced engine staffing levels. Petitioner further argued that the board’s construction rendered meaningless the last two sentences of that provision indicating that the parties would negotiate and work expeditiously to resolve any differences that may arise.
*514 Thereafter, the board moved and the City cross-moved to dismiss the proceeding for failure to state a cause of action, arguing that the board’s decision had a rational basis and was not arbitrary but rather was consistent with the record and applicable law. Following the motion court’s denial of the motion and cross motion, respondents answered and again sought dismissal of the proceeding.
The court found no reason to disturb the board’s determination. The court held that, once the board determined that the agreement expired on January 31, 2011, it rationally applied its own precedent to find that this “sunset provision” rendered inapplicable the theory that nonmandatory subjects could be converted into mandatory subjects by way of incorporation into a collective bargaining agreement. Hence, any provision in the agreement that required petitioner and the City to negotiate the reduction of engine staffing levels expired with the agreement. The court further found that the board rationally determined, based on its own precedent interpreting the NYCCBL, that there was no post-expiration obligation to negotiate the matter unless the reduction had an impact on safety. Thus, the board properly directed a hearing to establish a record concerning that issue.
We find that the motion court properly denied the petition and dismissed the proceeding. Indeed, the board’s determination was rational and did not render any provision in paragraph Eleventh meaningless.
To begin, if the board’s determination has a rational basis, we must affirm, even if this Court would have interpreted the provision differently (see Matter of Peckham v Calogero, 12 NY3d 424, 430-431 [2009]). Here, the board rationally concluded that paragraph Eleventh’s reference to the “expiration of this Agreement, January 31, 2006” was a sunset provision (see Matter of Professional Staff Congress-City Univ. of N.Y. v New York State Pub. Empl. Relations Bd., 7 NY3d 458, 468 [2006]). Further, the board properly concluded that, after the agreement’s expiration, if the City intended to reduce engine staffing levels, it would negotiate “to the extent required by the New York City Collective Bargaining Law.” Under the current Collective Bargaining Law, staffing levels are a nonmandatory subject of collective bargaining (see Matter of Uniformed Firefighters Assn. of Greater N.Y. v New York City Off. of Collective Bargaining, Bd. of Collective Bargaining, 163 AD2d 251 [1st Dept 1990]). Contrary to petitioner’s contention, the board’s decision does not render meaningless the last sentence of paragraph Eleventh— “[s]hould differences between the parties arise, it is the intent *515 of the parties to work expeditiously to resolve them” — because the safety impact of any staffing level reduction remains negotiable. Nor does that sentence render staffing levels a mandatory subject of collective bargaining, as petitioner argues.
The result of petitioner’s interpretation would be that, at a time when the City had obtained a final determination that staffing levels were not subject to mandatory collective bargaining, it must then follow petitioner’s reading of paragraph Eleventh, rendering the negotiation of staffing levels mandatory going forward. If this were the intent of the parties, the agreement could simply have stated that, following its expiration, staffing levels would be subject to mandatory collective bargaining. On the other hand, limiting bargaining “to the extent required by the New York City Collective Bargaining Law,” left open the possibility that the union could persuade the Legislature to amend the law.
We have considered the parties’ remaining arguments and find them unavailing. Concur — Mazzarelli, J.E, Acosta, Saxe and Moskowitz, JJ.

 The UFOA is not a party to the agreement and, thus, is not a party to this appeal.